549 So.2d 189 (1989)
Jorge ZERQUERA, Appellant,
v.
STATE of Florida, Appellee.
No. 70751.
Supreme Court of Florida.
September 28, 1989.
*190 Peter Raben of Breslin & Raben, P.A., Coconut Grove, for appellant.
Robert A. Butterworth, Atty. Gen., and Michele L. Crawford, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
Jorge Zerquera appeals multiple convictions, including a conviction for first-degree murder, and a sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed, we affirm the convictions for armed robbery, second-degree grand theft, second-degree arson, and tampering with physical evidence, but find we must reverse the first-degree murder conviction, vacate the sentence of death, and remand for a new trial.
The relevant facts reflect that in October, 1984, the body of a cab driver was discovered on a commercial property in Hialeah. The cab was located several blocks away and had been set on fire. The victim's pockets were turned out and the medical examiner testified that the victim had died from a gunshot wound to the base of his head caused by a .22 Magnum derringer. Two weeks after the crimes, Scott Puttkamer was arrested for unrelated car burglaries. During his interrogation, Puttkamer informed detectives that his former roommate, Jorge Zerquera, had killed the cab driver and that Zerquera had threatened him with a .22 Magnum derringer. After failing a lie detector test, Puttkamer gave another statement to the police in which he admitted working with Zerquera in committing the robbery and sharing in the eighteen dollars stolen from the cab driver.
The police located Zerquera several days later and asked him to go to the police station. Zerquera was not restrained in any way and, after reading each line of a statement of rights form aloud, placed his initials at the end of each line. Zerquera was informed that the police were investigating several auto thefts and the homicide of the cab driver. Zerquera admitted stealing many cars and told officers that he wanted to cooperate and agreed to execute a consent form to search his motel room. Zerquera was also told that Puttkamer had given the police a statement in which he named Zerquera as the triggerman in the homicide. The investigating detective read a few excerpts from Puttkamer's statement to Zerquera, who replied, "I don't want to discuss it." The investigating detective then left Zerquera alone in the room with Puttkamer's statement on the table. When the detective reentered a few minutes later, Zerquera initiated the conversation by asking, "Scott puked, huh?" The detective responded, "Well, he puked twenty-six pages." Zerquera then said, "Go get your tape-recorder."
*191 After being given Miranda[1] warnings again, Zerquera stated on tape that he understood his rights and wanted to speak without counsel. In his statement, Zerquera said that his and Puttkamer's original intent was to rob the cab driver; that Puttkamer shot the cab driver; and that he did not know Puttkamer was going to shoot the cab driver. The tape-recorded statement was transcribed and then reviewed and initialed by Zerquera for purposes of accuracy.
The state indicted Zerquera and Puttkamer on charges of (1) first-degree murder of the cab driver, (2) robbery of the cab driver, (3) grand theft of the cab, (4) arson in the second degree of the cab, and (5) tampering with evidence with respect to the destruction of the cab.
Ten days before the joint trial of Zerquera and Puttkamer, Puttkamer's attorneys objected on grounds of untimely discovery to the use at trial of certain physical evidence discovered by the state, namely, a brown suitcase belonging to Puttkamer and a plastic bag containing .22 caliber bullets and casings. The items were found during a routine search of Puttkamer's room and were noted in the police report. Puttkamer's counsel argued that he was not given the police report and that, after his inquiry about any kind of search during his discovery deposition, the investigating officer said they might have found something but everything was returned to the proper owner, thus he was never made aware of these particular items. At a subsequent evidentiary hearing, Puttkamer's counsel learned that the bullets and casings were found in a plastic bag with Puttkamer's old paycheck stubs. Puttkamer's attorney then filed a motion to suppress this evidence, asserting it was prejudicial to his defense. Zerquera's attorney was not noticed or present at these proceedings. The trial court granted Puttkamer's motion to suppress the evidence.
The joint trial began on February 13, 1986, and a panel of six jurors was selected because the prosecutor had announced that the death penalty was not being sought. Puttkamer's attorney, in his opening statement, argued that the evidence would show Zerquera fired the fatal shot. Zerquera then moved for a severance based upon Bruton[2] violations and antagonistic defenses. The court granted the motion and the state proceeded against Puttkamer since the court had held that Zerquera had been prejudiced. After a short recess, Puttkamer agreed to plead guilty to the reduced charges of second-degree murder and robbery with a weapon with the understanding that the state would not prosecute the remaining charges of grand theft, arson, automobile theft, and car burglary, and that Puttkamer could be sentenced from ten years to life imprisonment.
Prior to Zerquera's second trial, the state announced it would ask for the death penalty, an action which Zerquera challenged. The trial judge found that the state was estopped from seeking the death penalty and further found that a jury "could not validly recommend the death penalty in this case." We subsequently reversed that holding. State v. Donner, 500 So.2d 532 (Fla. 1987).
The only real factual dispute in Zerquera's trial centered on the identity of the triggerman. The state presented Zerquera's taped statement to the jury in which he admitted the robbery and named Puttkamer as the triggerman. When called to testify, Puttkamer stated that neither of them had any money, that they were hungry, and that they agreed to rob a cab. He said that Zerquera got in the back seat of the cab behind the driver while he got in the back seat behind the passenger seat. Puttkamer also stated that, when Zerquera fired the gun, Puttkamer jumped from the cab and ran back to the motel, but that when he arrived, Zerquera was already back.
A major evidentiary issue developed over the .22 caliber bullets found in Puttkamer's personal belongings. During Puttkamer's earlier motion to suppress the bullets, his *192 attorney had argued that the bullets were very damaging to Puttkamer's claim that he was not the triggerman and also that their discovery was favorable to Zerquera's defense. As previously noted, the trial court suppressed the evidence against Puttkamer. During Zerquera's trial, the state continually objected to questions asked in cross-examination of Puttkamer and the investigating detective that were designed to elicit testimony concerning how and where the .22 caliber bullets were found. The state's objections were on the grounds of hearsay and that the questions were beyond the scope of direct examination. The objections were sustained. Other evidence presented by the state implied that the bullets were Zerquera's. The jury found Zerquera guilty on all counts and, at the close of the penalty phase, recommended imposition of the death penalty by an eight-to-four vote.
The dispositive issue on the first-degree murder conviction concerns the denial of admission of evidence that would have shown that the .22 caliber bullets were found in Puttkamer's belongings. Zerquera argues that it was reversible error for the court to allow the state to block his attempt to present this evidence to the jury. The state consistently objected during Zerquera's cross-examination of Puttkamer and the investigating detective concerning the discovery of the bullets and their location. We find it was error to sustain these objections. The objections were clearly not sustainable on the basis that they were beyond the scope of direct examination. We have previously explained the parameters of cross-examination as follows:
"`[W]hen the direct examination opens a general subject, the cross-examination may go into any phase, and may not be restricted to mere parts ... or to the specific facts developed by the direct examination. Cross-examination should always be allowed relative to the details of an event or transaction a portion only of which has been testified to on direct examination. As has been stated, cross-examination is not confined to the identical details testified to in chief, but extends to its entire subject matter, and to all matters that may modify, supplement, contradict, rebut or make clearer the facts testified to in chief... .'"
Coxwell v. State, 361 So.2d 148, 151 (Fla. 1978) (quoting Coco v. State, 62 So.2d 892, 895 (Fla. 1953) (quoting 58 Am.Jur. Witnesses § 632 at 352 (1948))) (footnote omitted). See also Blair v. State, 406 So.2d 1103 (Fla. 1981); Ross v. State, 386 So.2d 1191 (Fla. 1980). Further, a hearsay problem did not arise with regard to the inquiry of Puttkamer as to what was contained in his personal belongings.
After keeping this evidence out of the trial, the state also presented evidence which raised the impression that Puttkamer and Zerquera shared these items. Given the fact that neither of the codefendants denied their participation, but only disagreed as to who owned the gun and who fired the fatal shot, the possession of the bullets found in Puttkamer's personal belongings was a substantial evidentiary fact to support Zerquera's defense. Zerquera's theory would have been particularly enhanced since Puttkamer named Zerquera as owner of the weapon while Zerquera stated it was Puttkamer's gun and he had no knowledge that Puttkamer intended to kill the cab driver. Under these circumstances, we are unable to apply the principles of harmless error set forth in State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Because it concerns the other convictions, we address the claim that Zerquera's confession was inadmissible. We find the record clearly establishes that Zerquera was properly informed of his Miranda rights and that questioning ceased when Zerquera invoked his right to remain silent. Zerquera re-initiated the conversation after invoking his right to silence and there is no evidence to demonstrate that the police conduct was such as to overbear his will or threaten him. The confession clearly meets the requirements set forth in Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).
The remaining issues are without merit except we note that the victim impact statements *193 received by the trial judge and her reference to them in her sentencing order raise very serious questions concerning the validity of the death sentence that might be imposed in view of the United States Supreme Court's decision in Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987).
Accordingly, we affirm all of Zerquera's convictions and sentences except his conviction for first-degree murder. We vacate the first-degree murder conviction and sentence and remand for a new trial.
It is so ordered.
OVERTON, McDONALD, SHAW, BARKETT and KOGAN, JJ., concur.
GRIMES, J., concurs in part and dissents in part with an opinion, in which EHRLICH, C.J., concurs.
GRIMES, Justice, concurring in part, dissenting in part.
The defense was not fully thwarted in its efforts to show where the bullets were found as evidenced by the following testimony of the investigating detective:
Q About three days after Scott Puttkamer was arrested you came into possession of some of his belongings; did you not?
A Yes.
Q And amongst those belongings was a plastic bag with Scott Puttkamer's cooking utensils and pay stubs and .22 Magnum bullets, and .22 Magnum casings; isn't that correct?
A No. There were no cooking utensils in there.
Nevertheless, I agree that the court erred in sustaining the state's objections to several other questions seeking to make it clear that the bullets had been found in Puttkamer's belongings. Because the question of who did the actual shooting directly bears on whether Zerquera should receive the death penalty, this error cannot be deemed harmless with respect to his sentence.
On the other hand, I cannot agree that Zerquera's conviction must be reversed. In a tape recording introduced as part of the state's case, Zerquera admitted that he and Puttkamer intended to rob the victim but that he did not know that Puttkamer was going to shoot him. By his own statement, Zerquera admitted the commission of first-degree felony murder. Because there was no evidence whatsoever of any lesser degree of murder, the court's rulings prohibiting further questioning with respect to the discovery of the bullets was harmless error on the issue of guilt or innocence.
I would affirm the conviction but reverse the sentence.
EHRLICH, C.J., concurs.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).