581 So.2d 49 (1991)
Vernon Ray COOPER, Appellant,
v.
STATE of Florida, Appellee.
No. 74611.
Supreme Court of Florida.
May 9, 1991.
Rehearing Denied July 10, 1991.
*50 Randy Hertz, New York University School of Law, New York City, for appellant.
Robert A. Butterworth, Atty. Gen., and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Cooper appeals the death sentence imposed upon resentencing. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and vacate the sentence.
In January 1974 Cooper and a companion robbed a grocery store in Escambia County. In affirming Cooper's conviction and sentence, this Court recited the facts as follows:
Cooper admitted at trial that he and one Steve Ellis robbed the grocery store, and that as they were making their escape in Cooper's black Camaro they were stopped by Deputy Wilkerson, who had stationed himself close to Interstate 10 in order to close off a possible escape route. There was conflicting testimony as to what then transpired. After being stopped, either Cooper or Ellis walked to Deputy Wilkerson's patrol car and fired two shots into his head. He was killed instantly.
A prompt report of Wilkerson's death caused officers Bates and Joy[e] to begin patrolling Interstate 10. They observed and stopped the Camaro after it had crossed into Alabama. Ellis, who was driving, left the Camaro and approached Bates, who began to frisk him. Joy[e] approached the Camaro, observed Cooper sitting in the passenger's seat, and returned to his patrol car. While doing so, he heard a shotgun fired from inside the Camaro. At that moment Ellis pulled a gun on Bates, but Bates reacted faster and shot Ellis fatally. Cooper then drove off in the Camaro. Both the officers fired several shots and gave chase, but Cooper escaped into the [countryside]. Cooper was captured the next day, with a shotgun in his possession, after a manhunt by over four hundred persons.
Cooper v. State, 336 So.2d 1133, 1136 (Fla. 1976), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977). Later, this Court affirmed the denial of Cooper's motion for postconviction relief, Cooper v. State, 437 So.2d 1070 (Fla. 1983), cert. denied, 464 U.S. 1073, 104 S.Ct. 986, 79 L.Ed.2d 221 (1984), and the federal courts denied his petition for writ of habeas corpus. Cooper v. Wainwright, 807 F.2d 881 (11th Cir.1986), cert. denied, 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 839 (1987). Based on Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), however, we vacated Cooper's sentence and remanded for a second sentencing proceeding before a newly empaneled jury. Cooper v. Dugger, 526 So.2d 900 (Fla. 1988).
At the new sentencing hearing the facts and circumstances of the events surrounding the death of Wilkerson were again presented and substantially reflected those expressed in our original opinion. Cooper was adamant, as he always has been, that *51 he did not kill the deputy. Cooper also presented additional personal historical data, character traits, and family testimony in an effort to establish nonstatutory mitigating circumstances.
By a tie vote, the resentencing jury recommended that Cooper receive a sentence of life imprisonment. The trial court, however, sentenced him to death, finding four aggravating factors (committed while under sentence of imprisonment, previous conviction of violent felony, committed during or in flight from the felony of robbery, and committed to avoid or prevent arrest) which outweighed two nonstatutory mitigating factors (history of alcohol abuse and maintenance of close family ties). Cooper raises four points on appeal: improper jury override; error in excluding polygraph results; error in admitting a photograph of the murder victim; and improper instruction on nonstatutory mitigating circumstances.
Cooper does not attack the trial court's findings in aggravation, and we find them to be supported by the record beyond a reasonable doubt. The state proved both that Cooper had been convicted previously of several armed robberies and that he was on parole from some of those convictions when the instant crime occurred. The evidence also showed that Wilkerson stopped Cooper and Ellis because of their just-completed armed robbery of the grocery store and that he died in their attempt to avoid arrest.
To sustain an override sentence, however, this Court must find the facts in support of the death sentence "so clear and convincing that virtually no reasonable person could differ." Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). In reviewing a jury override we must decide, after considering the totality of the circumstances, if the life recommendation is reasonable. If it is, the death sentence should be vacated; if it is not, the sentence should be affirmed.
Cooper testified that Ellis, not he, shot the deputy. From the circumstantial evidence one could draw conflicting conclusions on whether Cooper or Ellis shot the deputy. Although the trial judge found that Cooper did the killing, the evidence is far from certain on this issue.
Conflicting evidence on the identity of the actual killer can form the basis for a recommendation of life imprisonment. Hawkins v. State, 436 So.2d 44 (Fla. 1983); M alloy v. State, 382 So.2d 1190 (Fla. 1979). In the instant case, the jury might well have believed Cooper and decided that he did not kill the victim. Considering this, the nonstatutory mitigating evidence, and the totality of the circumstances, we cannot say that the jury's recommendation is not reasonable.[*] Therefore, we vacate Cooper's death sentence and remand for imposition of a sentence of life imprisonment with no possibility of parole for twenty-five years. Due to this holding, we do not address the other issues raised on appeal.
It is so ordered.
OVERTON and McDONALD, JJ., concur.
BARKETT, J., concurs specially with an opinion, in which KOGAN, J., concurs.
SHAW, C.J., dissents with an opinion, in which GRIMES, J., concurs.
GRIMES, J., dissents with an opinion, in which SHAW, C.J., concurs.
BARKETT, Justice, specially concurring.
I write only to point out that in addition to the evidence that could have supported a jury's conclusion that Cooper was not the triggerman, other mitigating evidence could have reasonably supported the jury's recommendation for a life sentence. As the trial court itself found, "the evidence establishes that defendant had a significant history of alcohol abuse." This Court has recognized that a history of alcohol abuse is a mitigating factor supporting a jury's *52 life recommendation. See Stevens v. State, 552 So.2d 1082, 1086 (Fla. 1989); Pentecost v. State, 545 So.2d 861, 863 (Fla. 1989); see also Amazon v. State, 487 So.2d 8, 13 (Fla.) (history of drug abuse), cert. denied, 479 U.S. 914, 107 S.Ct. 314, 93 L.Ed.2d 288 (1986); Norris v. State, 429 So.2d 688, 690 (Fla. 1983) (same).
The jury heard testimony that Cooper had a chronic alcohol problem. He began drinking alcohol at the age of fourteen years, and eventually drank about a fifth of alcohol daily. Cooper testified that he had consumed about a fifth of "Jim Beam" whiskey on the day of the crimes. This was corroborated by his sister's account of seeing him drinking during the morning of the crime and the crime scene investigator's discovery of an almost depleted bottle of "Jim Beam" in the Camaro.
Moreover, there was evidence that Cooper would not "in the future pose a danger to the community if he were not executed." Skipper v. South Carolina, 476 U.S. 1, 5, 106 S.Ct. 1669, 1671, 90 L.Ed.2d 1 (1986) (citations omitted). The doctor at the jail infirmary testified that Cooper suffers from emphysema and has roughly half the lung capacity of a healthy person. The jury was told such a condition generally does not improve and can become debilitating or even fatal. With a life sentence, Cooper would not be eligible for parole in Florida until he is sixty-two years of age, and he would still be subject to further incarceration because of detainers from Alabama and the federal government on the parole violations. During the fifteen years he has spent in prison for this offense, the only disciplinary infraction on his record was that he failed to stand during a count of prisoners on one occasion. The evidence further showed that while incarcerated, Cooper protected weaker inmates from more experienced prisoners, and encouraged younger inmates to rehabilitate themselves and to give up drugs. As this Court has recognized, a record of good conduct in prison can be viewed as supporting a jury's life recommendation under Tedder v. State, 322 So.2d 908 (Fla. 1975). See, e.g., Fead v. State, 512 So.2d 176, 179 (Fla. 1987), receded from on other grounds, Pentecost v. State, 545 So.2d 861, 863 n. 3 (Fla. 1989); McCampbell v. State, 421 So.2d 1072, 1075 (Fla. 1982).
This Court also has recognized that evidence of "positive character traits" supports a jury's life recommendation. Stevens, 552 So.2d at 1086; see also, e.g., Fead, 512 So.2d at 179 (good father, husband, provider); McCampbell, 421 So.2d at 1075-76 ("(1) appellant's exemplary employment record; (2) appellant's prior record as a model prisoner; (3) ... positive intelligence and personality traits ... [showing] the appellant's potential for rehabilitation; (4) appellant's family background; and (5) the disposition of the co-defendants' cases"). The trial court correctly found that Cooper "maintained close family ties throughout his adult life and attempted to keep those ties intact even through periods of incarceration." The evidence showed that prior to the immediate term of incarceration, Cooper regularly visited his brother, who was paralyzed in a nursing home, and brought him home on weekends. He also lived with and cared for his elderly and infirm father; he provided financial assistance to his parents, his sister and her family when they fell on hard times, as well as to his niece when she became pregnant; he helped pay his father's medical bills; he helped his niece's husband find a job; and when his sister was in need of protection from her husband, he rushed to her side even though it meant risking parole revocation.
Finally, Cooper expressed remorse for Deputy Wilkerson's death. When asked how he felt when he learned that Ellis had just killed a deputy, Cooper said, "I couldn't even begin to tell you how bad I felt. It's like the world had come to an end... . [It] was terrible."
In the totality of all this mitigating evidence, I agree with the majority that the override cannot legally be sustained.
KOGAN, J., concurs.
SHAW, Chief Justice, dissenting.
In order to sustain an override, this Court must find that "the facts suggesting *53 a sentence of death [are] so clear and convincing that virtually no reasonable person could differ." Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). This is a rigorous standard, but I believe it has been met in this case. The facts are clear and convincing: In the eight-year period immediately preceding the murder, Cooper had committed five separate armed robberies, any one of which could have resulted in a killing; the bullet removed from the dead officer in the present case was not fired from Ellis' gun, thus indicating that Cooper was the triggerman; and when Cooper and Ellis were stopped after the murder, Cooper fired his shotgun at an officer, apparently intending to shoot his way out. Of crucial importance is the fact that mitigating evidence is limited. I would sustain the override and affirm the death sentence given these exceptional circumstances.
GRIMES, J., concurs.
GRIMES, Justice, dissenting.
I respectfully dissent.
The majority portrays the defendant as an armed robber who was not out to hurt anyone. Eight years prior to the homicide at hand, defendant was convicted of two armed robberies in Alabama and was on parole at the time in question. He and his late partner in crime, Ellis, had committed three armed robberies in the Pensacola area prior to the armed robbery which immediately preceded the instant homicide.
The question at hand is whether the trial judge erred in overriding the jury's recommendation of life imprisonment. I am of the view that the trial judge did not err and that the facts support the trial judge's override.
At the outset, it is significant that while Officer Bates was frisking Ellis, the defendant fired his sawed-off shotgun from the front seat of the Camaro and shattered the window of Bates' patrol car. Had his aim been a bit better, there would have been a second homicide. Clearly, the defendant was attempting to shoot his way out.
Was the jury warranted in concluding that defendant was not the trigger man, as the majority opines? I think not. The gun that Ellis pulled on Officer Bates, and the only one in his possession when he was killed, a nickel- or chrome-plated .38 Smith and Wesson revolver, described by witnesses as used by Ellis in the robbery, was not the weapon that fired the bullet which was recovered from the head of Officer Wilkerson. The blue steel pistol that defendant exhibited at the robbery was never found.
In the face of four statutory aggravating circumstances and no statutory mitigating circumstances, I do not think that there is a reasonable basis upon which the jury's recommendation can be sustained.
SHAW, C.J., concurs.
NOTES
[*] The trial court's finding Cooper to have been the actual killer may have been a substitution of the court's judgment for that of the jury. If it were clear that Cooper killed the deputy, the override sentence might be sustained on the totality of the circumstances.