961 So.2d 220 (2007)
William VAN POYCK, Appellant,
v.
STATE of Florida, Appellee.
No. SC05-1513.
Supreme Court of Florida.
May 3, 2007.
Rehearing Denied July 16, 2007.
Mark Olive, Tallahassee, FL, Benjamin B. Brown of Quarles and Brady, LLP, Naples, FL, Jeffrey O. Davis and Lauri A. Rollings of Quarles and Brady, LLP, Wilwaukee, WI, for Appellant.
Bill McCollum, Attorney General, Tallahassee, FL, Celia A Terenzio, Assistant Attorney General, West Palm Beach, FL, for Appellee.
PER CURIAM.
William Van Poyck, who is under a sentence of death, appeals the denial of his successive motion for postconviction relief. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. The motion relies on an affidavit by a former prison inmate claiming that Van Poyck's codefendant, Frank Valdes, confessed that he committed the murder for which both he and Van Poyck were sentenced to death. Based on *221 decisions in previous appeals rejecting related claims concerning the identity of the triggerman, including our affirmance in 2005 of the denial of DNA testing, we affirm the trial court's order.

FACTS AND PROCEDURAL HISTORY

Prior Proceedings
Van Poyck was convicted of first-degree murder and sentenced to death for the killing of correctional officer Fred Griffis. The murder occurred during an attempt by Van Poyck and Valdes[1] to free Van Poyck's friend, James O'Brien, from a prison van while he was being taken by Griffis and another correctional officer, Steven Turner, to a doctor's appointment outside prison. Our opinion in Van Poyck's direct appeal explained the circumstances of the murder:
Griffis, who was not armed, drove the van while Turner watched O'Brien, who was secured in a caged area behind Griffis. After Griffis pulled the van into an alley behind the doctor's office, Turner looked down for his paperwork. Upon looking up, he saw a person, whom he later identified as Van Poyck, aiming a pistol at his head. Van Poyck ordered Turner to exit the van. At the same time, Frank Valdez, an accomplice of Van Poyck's, went to the driver's side of the van. Turner testified that Van Poyck took his gun, ordered him to get under the van, and kicked him while he was attempting to comply with Van Poyck's order. He testified that, while under the van, he saw Griffis exit the van; he noticed another person forcing Griffis to the back of the van; and, while noticing two sets of feet in close proximity to the rear of the van, he heard a series of shots and saw Griffis fall to the ground. Turner further stated that Van Poyck had stopped kicking him when the gunfire started, but noted that he did not know where Van Poyck was at the time of the shooting. Griffis was shot three times, once in the head and twice in the chest. Expert testimony indicated that the shot to the head was fired with the barrel of the gun placed against Griffis' head and that each of the wounds would have been fatal. It was also determined that the murder weapon was a Hungarian Interarms nine millimeter semiautomatic pistol.
Van Poyck v. State, 564 So.2d 1066, 1067 (Fla.1990) (Van Poyck I).
The jury found Van Poyck guilty of first-degree murder and, at the conclusion of the penalty phase, recommended the death penalty by a vote of eleven to one. The trial court found four aggravating factors[2] and nothing in mitigation. Concerning Van Poyck's role in the murder, the court found:
Mr. Van Poyck is an individual who is quite intelligent and very knowledgeable as to the law and that he himself admits that he was well aware of the law including felony murder, that he himself was the individual who planned this operation who retained Mr. Valdez to assist him and who checked the guns on the way to the location where this murder occurred to see to it that they were loaded. By all evidence Mr. Van Poyck was a major participant in this murder.

*222 The Court further finds that the State clearly presented competent and substantial evidence as to the crime of first degree felony murder and or first degree premeditated murder and in reality presented competent evidence that Mr. Van Poyck may have in fact been the individual who pulled the trigger and shot Fred Griffis.
Van Poyck was sentenced to death.
This Court affirmed Van Poyck's murder conviction and death sentence. We concluded that the conflicting evidence on Van Poyck's whereabouts when Griffis was shot rendered the evidence legally insufficient to prove premeditated murder. Van Poyck I, 564 So.2d at 1069. However, we rejected Van Poyck's claim that he "was a minor actor and did not have the culpable mental state to kill" required for imposition of the death penalty on a defendant who was not the actual killer. Id. at 1070. We stated:
Although the record does not establish that Van Poyck was the triggerman, it does establish that he was the instigator and the primary participant in this crime. He and Valdez arrived at the scene "armed to the teeth." Since there is no question that Van Poyck played the major role in this felony murder and that he knew lethal force could be used, we find that the death sentence is proportional.
Id. at 1070-71.
Subsequently, this Court affirmed the denial of Van Poyck's initial motion for postconviction relief. Van Poyck v. State, 694 So.2d 686 (Fla.1997) (Van Poyck II). Among other issues addressed, we rejected Van Poyck's claim that "the judge and jury weighed the invalid aggravating factors that the murder was premeditated or that Van Poyck was the triggerman," concluding that the challenge to the conviction for premeditated murder was resolved in the direct appeal. Id. at 698 & n. 6.[3]
The United States District Court for the Southern District of Florida denied Van Poyck's petition for a writ of habeas corpus, and the Eleventh Circuit affirmed. See Van Poyck v. Fla. Dep't of Corr., 290 F.3d 1318 (11th Cir.2002) (Van Poyck III). The Eleventh Circuit addressed two issues relevant to the current proceedings. The first issue was whether Van Poyck's trial counsel was ineffective in failing to present evidence that Valdes' clothing had blood matching Griffis's blood type, that Valdes' girlfriend purchased the murder weapon, and that the murder weapon was in Valdes' possession when he and Van Poyck left to commit the crime. The Eleventh Circuit concluded that although this Court had not addressed the issue, it could reasonably have found that Van Poyck suffered no prejudice from any deficiency. Id. at 1325. The Eleventh Circuit observed that the State presented no evidence at the penalty phase that Van Poyck was the triggerman, and that although the prosecutor suggested several times in closing argument that Van Poyck killed Griffis, its case for the death penalty rested mainly on the four aggravating factors and Van Poyck's role as a major participant in the underlying felony. Id. at 1325-26. The Eleventh Circuit stated:
Especially because the prosecutor's main argument was that the death penalty was appropriate regardless of who the triggerman was, we see no reasonable *223 probability that, if Counsel had presented the additional evidence that Petitioner was not the triggerman, the outcome of the sentencing phase would have been different. The Florida Supreme Court could reasonably conclude that no prejudice existed. The Florida Supreme Court did reasonably conclude that the triggerman-evidence claim entitled Petitioner to no relief.
Id. at 1326.
The Eleventh Circuit also rejected Van Poyck's claim that the jury and trial court improperly considered evidence that Van Poyck was the triggerman. The court concluded that because the evidence of premeditation was insufficient, it had "no good reason to think that the jury relied on something more than the factually supported theory of felony murder." Id. at 1329. The Eleventh Circuit also noted that "whether [Van Poyck] was actually the triggerman was of only minimal importance during the prosecutor's closing." Id. Finally, the Eleventh Circuit concluded that the trial court's statement that the State presented competent evidence that Van Poyck may have been the triggerman "does not mean that the trial court had found, beyond a reasonable doubt, that Petitioner was the triggerman. And, it certainly does not mean that the trial court relied upon Petitioner's role as triggerman as some kind of aggravating factor." Id. at 1330.
In 2005, this Court affirmed the trial court's denial of Van Poyck's request under Florida Rule of Criminal Procedure 3.853 for DNA testing of clothing Valdes and Van Poyck were wearing when Griffis was killed. See Van Poyck v. State, 908 So.2d 326, 330 (Fla.2005) (Van Poyck IV). Citing to the Eleventh Circuit opinion in Van Poyck III, we relied on the lack of emphasis on the identity of the triggerman in the penalty phase and the trial court's sentencing order. We also pointed to our conclusion in the direct appeal that Van Poyck was the instigator and a major participant in the crime. We concluded that "there is no reasonable probability that Van Poyck would have received a lesser sentence had DNA evidence establishing that he was not the triggerman been presented at trial." Id.

Current Proceedings
In 2005, while his appeal in Van Poyck IV was still pending, Van Poyck filed a successive motion for postconviction relief asserting that an affidavit by a prison acquaintance of Valdes constituted newly discovered evidence. In the affidavit, Enrique Diaz stated that between 1990 and 1997, Valdes "repeatedly and consistently" said he had shot and killed Griffis. Diaz explained that he delayed reporting these conversations until he was released from prison in August 2004 because he feared for his life, a concern that was "reinforced when F.S.P. guards murdered Frank Valdes in his cell while [he] was there at F.S.P."
The trial court denied Van Poyck's motion without an evidentiary hearing, finding that it was untimely, that the Diaz affidavit did not constitute newly discovered evidence, and that "all of the defendant's grounds for relief have been fully addressed" in the opinions of this Court and the Eleventh Circuit. Van Poyck appeals from that order. He recognizes that our decision in Van Poyck IV is controlling, but asks us to reconsider that decision.

ANALYSIS

Governing Standards
Florida Rule of Criminal Procedure 3.851 governs the timeliness of, and necessity of an evidentiary hearing on, successive postconviction motions in final capital *224 cases. Rule 3.851(d)(1) bars a postconviction motion filed more than one year after a judgment and sentence are final. An exception to this rule permits otherwise untimely motions if the movant alleges that "the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence." Fla. R.Crim. P. 3.851(d)(2)(A). Rule 3.851(f)(5)(B) permits denial of a successive postconviction motion without an evidentiary hearing "[i]f the motion, files, and records in the case conclusively show that the movant is entitled to no relief."
This Court's precedent provides the criteria for obtaining a new capital penalty phase based on newly discovered evidence. In addition to demonstrating that the evidence could not have been discovered previously through the exercise of due diligence, the defendant must establish that the newly discovered evidence probably would have produced a life sentence. Ventura v. State, 794 So.2d 553, 571 (Fla. 2001); see also Jones v. State, 591 So.2d 911, 915 (Fla.1991) ("[T]he newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial."); Scott v. Dugger, 604 So.2d 465, 468 (Fla.1992) ("The Jones standard is also applicable where the issue is whether a life or death sentence should have been imposed.").
Because the trial court denied Van Poyck's motion solely on the basis of the pleadings, making a legal rather than a factual determination, this Court evaluates each of these matters de novo. See State v. Coney, 845 So.2d 120, 137 (Fla.2003) (holding that "pure questions of law" that are discernible from the record "are subject to de novo review").

Timeliness and Due Diligence
Apart from stating that the information in the Diaz affidavit was not newly discovered, the trial court made no findings as to whether Van Poyck could have obtained the information earlier with the exercise of due diligence. In its response below, the State declined to assert this as a ground for denying Van Poyck's motion. The State also did not press the untimeliness of Van Poyck's motion as a basis for affirmance. Consequently, we accept the statement in the Diaz affidavit that he did not come forward sooner for fear of his life, and conclude that the motion, files, and records do not conclusively show that Van Poyck's newly discovered evidence claim is untimely under rule 3.851.

Probability of a Life Sentence
In denying Van Poyck's motion, the trial court pointed out that opinions of this Court and the Eleventh Circuit have "essentially held that even though the defendant was not the `triggerman,' the imposition of the death penalty was fair, just, and proportional." The trial court made no finding on the dispositive question of whether the contents of the affidavit, if taken as true, would probably produce a sentence of life imprisonment as the sole alternative to the death penalty.
On the question of whether the new evidence, if believed, would probably yield a life sentence, Van Poyck IV is controlling. There, relying on Van Poyck I and Van Poyck III, we determined that new evidence on the identity of the triggerman would not create a reasonable probability of a lesser sentence. 908 So.2d at 330. The "reasonable probability" standard from rule 3.853, which we applied in Van Poyck IV to affirm the denial of DNA testing, actually presents a lower hurdle for defendants than the Jones standard governing Van Poyck's current claim.
In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court adopted *225 the prejudice standard of a reasonable probability of a different result for claims of ineffective assistance of counsel and rejected the higher standard governing newly discovered evidence claims. In distinguishing the two tests of prejudice, the Court stated that "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome. . . . A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. The Jones standard for newly discovered evidence requires that the new evidence be such that it would probably produce an acquittal or a sentence of life imprisonment on retrial. Having decided in Van Poyck IV that new evidence showing that Valdes was the triggerman would not create a "reasonable probability" of a different result, we are bound to conclude here that different evidence on the same fact would not "probably" create a different result.
Recognizing that Van Poyck IV is controlling as to his current claim, Van Poyck asks us to reconsider that decision. He relies in part on several opinions in which this Court noted the importance of triggerman status on the death-sentencing decision, and on a recent United States Supreme Court decision concerning new evidence on the identity of the triggerman in a capital case. We conclude that none of these decisions compels us to recede from Van Poyck IV.
In Barrett v. State, 649 So.2d 219 (Fla. 1994), we reversed a first-degree murder conviction for a new trial on a different issue and ruled that the defendant could not be sentenced to death on remand because the trial court erred in overruling a life recommendation that could have rested in part on the jurors' conclusion that a codefendant committed the murder. Id. at 223. Similarly, in Cooper v. State, 581 So.2d 49 (Fla.1991), this Court reversed the trial court's override of a jury's life recommendation, noting that the evidence supporting the trial court's determination that the defendant committed the killing was "far from certain" and that "[c]onflicting evidence on the identity of the actual killer can form the basis for a recommendation of life imprisonment." Id. at 51.
In Downs v. State, 572 So.2d 895 (Fla. 1990), this Court ruled that the trial court committed error, albeit harmless, when it excluded testimony in a new penalty phase that corroborated other testimony indicating that the defendant was not the triggerman. Id. at 899. The Court considered this evidence relevant to the circumstances of his participation in the crime, which, if true, would have been valid mitigation under the "minor participation" statutory mitigator. Id. (citing to § 921.141(6)(d), Fla. Stat. (1975)). In Zerquera v. State, 549 So.2d 189 (Fla.1989), the Court reversed a murder conviction because the trial court erroneously sustained objections to testimony that bullets of the same caliber used in the killing were discovered in a codefendant's belongings. Id. at 191-92. Dissenting in part, Justice Grimes stated that he would have granted only a new penalty phase. He concluded that "the question of who did the actual shooting directly bears on whether Zerquera should receive the death penalty." Id. at 193 (Grimes, J., concurring in part and dissenting in part).
In this case, unlike Barrett and Cooper, in which the jury recommended a life sentence, the trial court followed an eleven-to-one jury recommendation in imposing the death penalty. Further, unlike Downs and Zerquera, the issue here does not concern evidence on the identity of the triggerman excluded by the trial court. These decisions *226 do not compel reconsideration of the Court's 2005 decision in this case or an evidentiary hearing on the present newly discovered evidence claim.
In reaching this conclusion, we consider our recent decision in Diaz v. State, 945 So.2d 1136 (Fla.2006), which presented the same issue we now face here. In Diaz, this Court affirmed the summary denial of a newly discovered evidence claim based on an affidavit bearing on the identity of the triggerman in a case involving codefendants. The affiant was a fellow prisoner, Gajus, who had testified against Diaz at trial. Id. at 1146. The Court noted that the affidavit "[did] not recant his trial testimony on the critical issue of whether Diaz made a statement about being the shooter," but concluded that "even if the Gajus affidavit was considered a recantation of the trial testimony, it would not probably yield a less severe sentence." Id. at 1146-47.
In Diaz, the Court relied on its determination in the direct appeal that Diaz's actions made death a proportional punishment under Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) and Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), and on the postconviction court's specific finding "that in the sentencing order the trial judge indicated that whether Diaz was the shooter did not impact the final sentence." Diaz, 945 So.2d at 1147. We also quoted with approval the sentencing order's explanation for rejecting the statutory mitigator that the defendant was a minor participant in the crime. Id.
As in Diaz, the trial court in this case found that the death penalty was justified for Van Poyck independent of evidence regarding the identity of the triggerman. The trial court noted that Van Poyck checked the guns to ensure that they were loaded while traveling to the location where the murder occurred, and concluded that "[b]y all evidence Mr. Van Poyck was a major participant in the murder." At most, non-triggerman status would have constituted nonstatutory mitigation which, considering the four aggravating factors and absence of other mitigation, would probably not have yielded a lesser sentence.
Finally, we address Van Poyck's reliance on Bradshaw v. Stumpf, 545 U.S. 175, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005). In that case, Stumpf pled guilty to a capital murder committed during a robbery. Id. at 179, 125 S.Ct. 2398. The State argued in Stumpf's sentencing proceeding that he was the triggerman in a murder committed during a robbery, and obtained a sentence of death. As in this case, the prosecutor also asserted that the death penalty was appropriate even if Stumpf was not the shooter, "because the circumstances of the robbery provided a basis from which to infer Stumpf's intent to cause death." Id. at 180, 125 S.Ct. 2398. Subsequently, the State obtained information after Stumpf was sentenced that the codefendant, Wesley, admitted to a fellow inmate that he had shot the victim. The prosecution used the inmate's testimony to seek the death penalty in Wesley's trial. Wesley countered this evidence by pointing to the prosecutor's contradictory position in Stumpf's trial and Stumpf's resulting sentence of death. Wesley was sentenced to life imprisonment. Id.
The Supreme Court determined that "the precise identity of the triggerman was immaterial to Stumpf's conviction for aggravated murder" and reversed the Sixth Circuit's decision voiding Stumpf's guilty plea based on the new evidence. Id. at 187, 125 S.Ct. 2398. However, the Court determined that "it is at least arguable that the sentencing panel's conclusion about Stumpf's principal role in the offense *227 was material to its sentencing determination." Id. Because the Court found that it was "not clear whether the Court of Appeals would have concluded that Stumpf was entitled to resentencing had the court not also considered the conviction invalid," it remanded for reconsideration of the effect of the inconsistencies on the sentence. Id.
Bradshaw is largely limited to its facts and procedural posture. Its mandate was simply to reconsider the effect of the new evidence on the sentence, an issue the lower court had not reached because it had erroneously reversed the conviction. In addition, Bradshaw involves a due process claim grounded in inconsistent positions taken by the prosecution in trials of codefendants, which is not an aspect of this case.[4] To the extent that Bradshaw has any bearing on this case, it stands for the proposition that new evidence concerning the identity of the triggerman is "material" to a death sentencing determination. This Court's 2005 opinion in this case includes the same acknowledgment:
We do not hold . . . that it makes no difference in the capital sentencing process which of two codefendants actually committed the killing. Rather, we determine only that under the circumstances of this case involving a murder of a prison guard in a brutal armed attack planned by Van Poyck and carried out with Valdez, DNA evidence indicating that Van Poyck was not the triggerman would not have created a reasonable probability of a lesser sentence.
Van Poyck IV, 908 So.2d at 330. Therefore, Bradshaw does not require reconsideration of the 2005 decision.

CONCLUSION
The issue before us is whether Van Poyck is entitled to an evidentiary hearing on his claim asserting newly discovered evidence that Valdes was the triggerman in the murder of Griffis. We conclude that he is not. In Van Poyck I, we determined that Van Poyck's death sentence was a proportional punishment even though the evidence of premeditation was insufficient because the evidence was inconclusive on Van Poyck's whereabouts during the murder. In Van Poyck II, we rejected his claim that the jury and trial court invalidly considered as nonstatutory aggravation that the murder was premeditated or that Van Poyck was the triggerman, concluding that the issue had been resolved on direct appeal. In Van Poyck III, the United States Court of Appeals for the Eleventh Circuit concluded that additional evidence that Valdes was the triggerman would not have changed the outcome of the penalty phase. Finally, in Van Poyck IV, we ruled that DNA evidence proving that Valdes was the triggerman would not have created a reasonable probability of a different sentence for Van Poyck. Based on these decisions, particularly Van Poyck IV, which relies on the others and to which we adhere, we conclude that testimony by a former fellow inmate that Valdes confessed to being the triggerman in Griffis's murder probably would not have yielded a life sentence for Van Poyck. Accordingly, we affirm the trial court's summary denial of *228 his successive motion for postconviction relief.
It is so ordered.
LEWIS, C.J., and WELLS, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, J., dissents with an opinion.
ANSTEAD, J., dissenting.
I cannot agree with the majority that appellant's claim of new evidence does not merit a trial court hearing to evaluate its credibility and its weight, as well as its potential impact on his sentence of death.
Previously, this Court has rejected as immaterial appellant's claim that DNA evidence would demonstrate that he was not the actual killer in the homicide for which he has been sentenced to death. The appellant has now returned to this Court with essentially the same claim, but with substantial additional evidence that he was not the killer. He concedes that such evidence would not affect his conviction for first-degree murder, but asserts that it could affect his sentence of death. For the same reasons set out in my previous dissent, I cannot join in the majority's analysis and conclusion summarily rejecting this assertion:
We need only examine the trial record in this case to see explicit proof that the identity of the triggerman was both important and at issue in the jury's assessment of the appropriate penalty for Van Poyck. In this case, the prosecutor expressly argued to the jury during the penalty phase: "So again, it is important who the triggerman is. There is no doubt about it. It's important to your deliberations, okay." Subsequent to those statements the prosecutor told the jury: "So ladies and gentlemen, even though he says he was not the triggerman, I submit the evidence shows that he was, because the only eyewitness we have that actually saw the guns well enough to identify is Officer Turner. He is the one left alive here to tell you who had what gun."[n. 5] Thus, there can be no doubt that the prosecution, in seeking the death penalty, asserted to the jury first, that it was important in their deliberations on the penalty to determine who the triggerman was, and, second, in this case, the evidence supported a determination that the defendant was the triggerman. The jury, of course, after this argument, returned with a recommendation for death.[n. 6]
[N.5.] In addition, the trial court stated in its sentencing order:
The Court further finds that the State clearly presented competent and substantial evidence as to the crime of first degree felony murder and or first degree pre-meditated murder and in reality presented competent evidence that Mr. Van Poyck may have in fact been the individual who pulled the trigger and shot Fred Griffis.
[N.6.] This, of course, is the same jury that we determined was in error in finding the defendant guilty of premeditated murder.
On the face of this record how can we possibly now conclude that the identification of the triggerman is irrelevant to the determination of whether the death penalty should be imposed? The prosecutor has already answered that question for us. The majority has chosen to deal with a hypothetical situation: could the death penalty be imposed on a non-triggerman, rather than dealing with the actual situation presented here where the State sought the death penalty, asserting as grounds that the defendant was the triggerman, and the jury returned with a vote for the death penalty.
*229 Van Poyck v. State, 908 So.2d 326, 331-32 (Fla.2005) (Anstead, J. dissenting). Once again, the majority has erroneously predicated its summary rejection on the hypothetical situation of a case for the death penalty based solely upon the defendant's participation in the underlying felony offense of escape, rather than confronting the actual circumstances of this case, which included a prosecution claim that Van Poyck was the actual killer. The majority has essentially substituted its views for those of a sentencing jury in concluding that the identity of the actual killer would make no difference to a jury considering life or death.
NOTES
[1] The codefendant's name is alternatively spelled "Valdez" in some court documents.
[2] The aggravators were: (1) the murder was committed while Van Poyck was under a sentence of imprisonment, (2) Van Poyck was previously convicted of violent felonies, (3) Van Poyck knowingly placed many persons at great risk, and (4) the murder was committed to effect an escape.
[3] Van Poyck raised the issue of consideration by the jury and the trial court of evidence that he was the triggerman again in a petition for a writ of habeas corpus. We denied the petition and concluded that the claim was procedurally barred because it was raised and rejected in the direct appeal and determined to be procedurally barred in the postconviction appeal. Van Poyck v. Singletary, 715 So.2d 930, 931 (Fla.1998).
[4] In the opinion in Valdes' direct appeal from his conviction and sentence of death, this Court again recounted the testimony by Turner that he could not tell who shot Griffis. Valdes v. State, 626 So.2d 1316, 1318 (Fla. 1993). The Court found substantial, competent evidence to support the trial court's rejection of the mitigator of minor participation by an accomplice, and stated that its characterization of Van Poyck as the major participant "[did] not mean Valdes' participation was minor." Id. at 1324.