STEVENSON, J.
Lionel Jeaneharles was tried by jury and convicted of first degree murder. In this appeal from that conviction, the defendant challenges three of the trial court’s evidentiary rulings. More specifically, he claims the trial court abused its discretion: by permitting the State to introduce evidence that one of the alibi witnesses went to defense counsel’s office to tell his story at the urging of another, thus, suggesting that the defendant had suborned perjury (point I); by permitting the State to introduce extrinsic evidence to impeach his alibi witness on a collateral matter (point II); and by allowing the State to introduce a gruesome autopsy photograph (point III). We find no abuse of discretion in any of the challenged rulings and affirm each; we write, however, to address the issue raised in point II.
Woalle Felix was shot on Christmas Day 2003 and died four days later after life support was removed. There was no physical evidence linking the defendant to the crime, and the State’s case against him *657 hinged upon the testimony of Alandra Houston, Felix’s fourteen-year-old girlfriend, who was present at the time of the shooting and identified the defendant as the shooter. At trial, Houston testified that, at around 9 p.m. on Christmas Day 2003, she, Felix, and Felix’s friend Samson Bruno were standing outside of her house when a light blue or gray Chevy Lumina— a car in which Houston had observed the defendant earlier that day — pulled up at an angle. Houston testified that the car’s brights were on and she was momentarily blinded. Thereafter, however, she saw the defendant jump from the car with a long gun and heard him say “what now, what now.”
Houston heard the gun cock. Bruno fled first and the defendant fired in his direction. According to Houston, the defendant then turned his attention to her, telling her to move. At the time, Felix was standing behind her. Felix fled and attempted to jump a nearby gate. The defendant fired a shot and Felix fell to the ground. Houston testified that the defendant walked toward Felix and that she then heard between two and four more shots. According to Houston, after the shots were fired, she and the defendant passed by one another, she on her way to Felix and the defendant on the way to his car.
The defendant insisted he was not the perpetrator and called long-time friend Christopher O’Neal as an alibi witness. O’Neal testified that he and the defendant grew up together, that he and the defendant frequently rode dirt bikes together, and that, on Christmas Day 2003, he, the defendant and several others had gone dirt bike riding from 10:00 a.m. to about 5:45 p.m. According to O’Neal, the defendant then left with his girlfriend, but returned at “around” 8:00 p.m. and remained with him until about 11:30 p.m.
O’Neal’s testimony on direct examination suggested that at least part of the reason that he was able to place the defendant back in his company at 8:00 p.m. on the night in question was because Deputy Williams, a neighborhood officer, had instructed the group that they could ride the dirt bikes until dark, and, when the defendant returned, it was “about dark” and O’Neal was putting the dirt bikes away. On cross, the State pursued this issue with O’Neal, eliciting testimony from O’Neal that it gets dark at 8:00 p.m., that he recalled Deputy Williams telling them earlier that day to put the bikes up at dark, and that one of things that “st[u]ck[ ] out in his mind” was that they saw Deputy Williams that day. Later, the State called Deputy Williams as a rebuttal witness to testify that he had been away on vacation on Christmas Day 2003. Defense counsel objected to the State’s calling Deputy Williams, arguing that whether the deputy was working on Christmas Day 2003 had nothing to do with the shooting and it was impermissible for the State to call the deputy for the purpose of impeaching O’Neal on a collateral matter. The trial court overruled the objection and such ruling forms the basis for point II of the defendant’s appeal.
Florida’s Evidence Code permits a party to attack a witness’s credibility by calling other witnesses to testify that “material facts are not as testified to by the witness being impeached.” § 90.608(5), Fla. Stat. (2009) (emphasis added). “An issue is collateral for purposes of impeachment by contradiction, if it cannot be introduced for any reason other than contradiction.” Griffin v. State, 827 So.2d 1098, 1099 (Fla. 1st DCA 2002) (citing Lawson v. State, 651 So.2d 713, 715 (Fla. 2d DCA 1995)). “ ‘Two types of evidence pass this test: (1) facts relevant to a particular issue; and (2) facts which discredit a witness *658 by pointing out the witnesses] bias, corruption, or lack of competency.’” Foster v. State, 869 So.2d 743, 745 (Fla. 2d DCA 2004) (quoting Lawson, 651 So.2d at 715).
The defendant insists that whether O’Neal encountered Deputy Williams on Christmas Day 2003 is an irrelevant, collateral issue and, thus, not one that could support the calling of a rebuttal witness for the purposes of impeachment. In support of his argument, the defendant relies upon Correia v. State, 654 So.2d 952 (Fla. 4th DCA 1995), and insists that the facts in the instant case are analogous. In Corr-eia, the victim testified that the defendant fired shots at him. An eyewitness generally confirmed the victim’s version of events, but could not identify the defendant as the perpetrator. The defendant insisted he had been misidentified and called an alibi witness to testify that the defendant was at home at the time of the shooting. The alibi witness was a friend of the defendant’s mother and testified that she had spent the day at the defendant’s home watching television and talking with the defendant’s mother, that the defendant had stayed in bed, and that she had actually taken the defendant’s temperature and given him Tylenol. On cross examination, the State questioned the alibi witness concerning the program she had watched on television, where she had administered the Tylenol, and whether anyone had stopped by the home that day. Further, after the witness stated she did not recall if the defendant’s mother had cable, the State impeached her with a deposition statement wherein she had stated the defendant’s mother did have cable. Thereafter, over the defendant’s objection, the State was permitted to call the defendant’s mother as a rebuttal witness to contradict the alibi witness’s testimony regarding where she administered the Tylenol and who else was in the home that day and to call the cable company’s record custodian to testify that the defendant’s mother did not have cable on the day in question.
On appeal, the defendant continued to insist that the rebuttal testimony had been introduced to impeach his alibi witness on collateral issues — something not permitted under the rules of evidence. This court agreed, holding that where the Tylenol was administered, what the witness watched on television, and whether the defendant’s mother had cable were collateral, and not material, issues. In so doing, the majority wrote that “[mjinor discrepancies in a witness’s testimony or between witnesses can be expected in all cases”; that while the State properly cross-examined Ericksen concerning the details of where she administered the Tylenol and whether she was watching cable television, “not all of these details comprised material parts of defendant’s alibi defense”; and that Ericksen “did not testify on direct examination that the reason she remembered being at defendant’s house on the day in question was because she was watching a particular movie shown on cable television” and, thus, the “issue of watching cable television was not a material part of Ericksen’s testimony supporting defendant’s alibi.” Id. at 954, 955.
In this case, the defendant’s whereabouts at about 9:00 p.m. was clearly a critical issue — Houston claimed he was in front of her home, shooting at Bruno and Felix, and O’Neal claimed the defendant was with him. O’Neal testified that he and the defendant frequently rode their dirt bikes together and his testimony is fairly interpreted as suggesting that his memory of the defendant being in his presence at about 8:00 p.m. on Christmas Day 2003 is linked to the fact that he remembered encountering Deputy Williams on the day in question, that Deputy Williams told them to put the bikes up at dark, and, when the defendant returned, it was *659 “around dark” and he was putting the bikes away. We, thus, find that whether O’Neal encountered Deputy Williams on the day in question was a material issue and hold that there was no abuse of discretion in the trial court’s permitting the State to call Deputy Williams as a rebuttal witness to impeach O’Neal on this point.
Having concluded that each of the issues raised by the defendant is without merit, we accordingly affirm his judgment of conviction.

Affhmed.

GROSS, C.J., and TAYLOR, J., concur.