POLEN, J.
The defendant challenges his conviction and sentence on a number of issues. We agree with the defendant in that we believe the trial court committed reversible error by excluding the testimony of Mr. Deal, who is the father of the male victim and whose proffered testimony included that he was present for the victims’ “internet search” for, and identification of, the defendant. We are not persuaded, however, by the defendant’s other arguments on appeal.
Sometime after being beaten and robbed by armed intruders, the victims conducted an “internet search” for a man named “Tim,” which was the name that one of the *954 intruders used to call out to the other. The female victim testified that, as a result of this search, she found a picture of the defendant and recognized him as one of her attackers. With this positive identification, the defendant was arrested and charged with home invasion robbery, aggravated battery, aggravated assault with a firearm, and false imprisonment.
The defendant sought to call Mr. Deal to testify that, immediately after the robbery, Deal, the two victims, and Deal’s mother had gotten together and discussed the possibility that “Madman” had been the person who committed the crime. Defense counsel proffered that Deal would testify that all of these people, two of whom never saw the attackers, looked on the internet for a picture of “Tim.” Furthermore, Deal would have testified that it was he who initially showed a picture of “Tim Alexander” to the victims prior to them conducting the internet search.
The trial court ruled that this testimony would only impeach the victim-witnesses’ testimony about who was present during the internet search for “Tim,” and that impeachment on that issue was a collateral matter for which extrinsic evidence was not allowed. As a result, the defendant was not permitted to call Deal to testify about the circumstances surrounding the “internet search.” We hold this was an error.
“A trial court’s decision to admit or exclude evidence is reviewed by utilizing the abuse of discretion standard of review. However, this discretion is limited by the rules of evidence.” Nationwide Mut. Fire Ins. v. Bruscarino, 982 So.2d 758, 754 (Fla. 4th DCA 2008) (citations omitted). Florida’s Evidence Code “permits a party to attack a witness’s credibility by calling other witnesses to testify that ‘material facts are not as testified to by the witness being impeached.’ ” Jeancharles v. State, 25 So.3d 656, 657 (Fla. 4th DCA 2010) (emphasis original) (quoting § 90.608(5), Fla. Stat. (2009)). The test for determining whether a matter is collateral or irrelevant ‘“is whether the proposed testimony can be admitted ... for any purpose independent of the contradictions.’ ” Lawson v. State, 651 So.2d 713, 715 (Fla. 2d DCA 1995) (quoting Dupont v. State, 556 So.2d 457, 458 (Fla. 4th DCA 1990)). “Two types of evidence pass this test: (1) facts relevant to a particular issue; and (2) facts which discredit a witness by pointing out the witness’ [sic] bias, corruption, or lack of competency.” Id. at 715 (citing Gelabert v. State, 407 So.2d 1007, 1009-10 (Fla. 5th DCA 1981)); see also Correia v. State, 654 So.2d 952, 954 (Fla. 4th DCA 1995).
In the instant case, the defense sought to call Deal to the stand, and proffered the following testimony:
[O]n the night of this incident, [the victims] went back to the house [with Deal and Deal’s mother], they ... didn’t mention the name Tim to him, they mentioned the name Madman. [Deal] then goes out and comes back with a picture of Tim Alexander, then they go to the internet and they find that, that Tim Alexander.... [One victim] claimed that it didn’t happen and then he said it wasn’t that night, it wasn’t that week, my girl went on the internet, I wasn’t there, and then the girl said she did it alone. I specifically asked those questions.
The trial court did not allow the defendant to call Deal to testify because “impeachment has to be on a material issue in order to introduce extrinsic evidence[, and] this is extrinsic evidence.... [T]his evidence would not be admissible for any purpose other than the contradiction.”
The trial court erred, however, by not allowing the defense to call this witness because the testimony was, in fact, going to “be introduced for [a] reason other than contradiction.” See Jeancharles, 25 So.3d *955 at 657. Although Deal’s testimony would have indeed contradicted the witnesses who said the internet search was performed by the female-victim only, the proffered testimony also sought to discredit the reliability of the identification itself by suggesting that Deal influenced the identification by being in the room with the victims (one of whom being Deal’s son) as they conducted their search, as well as by suggesting to the victims that the defendant was likely the person for whom they were searching. See Mitchell v. State, 862 So.2d 908, 912 (Fla. 4th DCA 2008) (holding that if there is “any doubt” that a witness’s testimony may be the product of bias, corruption or lack of competency, “then the defendant should have a right to explore that [defect] before the jury”); see also Smith v. State, 98 So.3d 682, 637 (Fla. 4th DCA 2012) (“[W]here evidence tends in any way, even indirectly, to establish a reasonable doubt of defendant’s guilt, it is error to deny its admission.”).
The crux of the defense was misidentifl-cation. The trial court erred in determining that the issue on which Deal would testify was impeachment only, and was therefore collateral. The issue also included the reliability of the identification itself, which .cannot be said to be collateral to the defense in this case. Accordingly, extrinsic evidence of the circumstances surrounding the “internet” identification of the defendant — specifically Deal’s testimony — should have been admitted. The defendant’s conviction is therefore reversed and the case remanded for a new trial consistent with this opinion.

Reversed and Remanded for a New Trial.

MAY, C.J., and WARNER, J., concur.