# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D16-1828

_____

ROBERT ROY MACOMBER,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Clay County.
Don H. Lester, Judge.

August 30, 2018

B.L. THOMAS, C.J.

Appellant was convicted of capital sexual battery and lewd molestation based on evidence that he sexually abused his girlfriend's seven-year-old daughter, K.M. The evidence admitted at trial included K.M.'s trial testimony and her partially redacted pre-trial interview. We reject Appellant's argument on appeal that the trial court abused its discretion in admitting K.M.'s redacted pre-trial statement under section 90.603(23), Florida Statutes (2015). We agree with Appellant, however, that the trial court abused its discretion by preventing the jury from hearing K.M.'s full account of the circumstances surrounding the abuse, including her accusation that Appellant sexually abused his own daughter A.M.

In her pre-trial statement, K.M. stated that Appellant abused both her and A.M., in each other's presence. At trial, the trial court allowed K.M. to tell the jury that A.M. was present when Appellant abused her – which A.M. denied observing any such abuse – but the court did not allow Appellant to cross-examine K.M. regarding her pre-trial statement that Appellant sexually abused both children or to present A.M.'s denial of such abuse. K.M.'s pre-trial interview containing her accusations was similarly redacted and not submitted to the jury. Thus, the jury was not permitted to hear K.M.'s testimony that Appellant sexually abused her and A.M. in the same criminal episode or A.M.'s testimony that would have directly contradicted this testimony.

We hold that K.M.'s description of Appellant's abuse of A.M. was relevant evidence, and it was reversible error to exclude such evidence. This relevant evidence was not otherwise inadmissible, as K.M.'s allegation that Appellant abused both her and A.M was inextricably intertwined with K.M.'s statements that Appellant abused her. In addition, to exclude this relevant evidence was error under the rule of completeness, and such testimony should have been presented to the jury. Although A.M. was permitted to testify that she did not observe any abuse of K.M., this partial testimony did not adequately allow the jury to hear K.M.'s complete allegation that Appellant abused both of them and A.M.'s denial of such abuse. We therefore reverse Appellant's conviction and remand the case for a new trial.

*Analysis*

A court's decision to exclude testimony is reviewed for abuse of discretion, but that discretion is limited by the rules of evidence and the case law interpreting those rules. *Patrick v. State*, 104 So. 3d 1046, 1056 (Fla. 2012). The paramount rule of evidence is that "[a]ll relevant evidence is admissible, except as provided by law." § 90.402, Fla. Stat. (2015). The statutory definition of relevant evidence is "evidence tending to prove or disprove a material fact." § 90.401, Fla. Stat. (2015). The evidence that K.M. provided that Appellant sexually abused both her and A.M. during the same criminal act is relevant as to Appellant's criminal liability regarding K.M., in light of A.M.'s

proffered testimony that no such abuse occurred regarding her. The jury's conclusion on which witness was telling the truth would necessarily determine which verdict the jury would return; thus, the evidence would tend to "prove or disprove a material fact" – Appellant's guilt or innocence. *Id.*; *State v. Taylor,* 648 So. 2d 701, 704 (Fla. 1995) ("[Defendant's] refusal [to submit to field sobriety test] is relevant to show consciousness of guilt. If he has an innocent explanation for not taking the tests, he is free to offer that explanation in court.").

The next step in our analysis is whether this relevant evidence was otherwise inadmissible "as provided by law." § 90.402, Fla. Stat. (2015). Here, the State moved in limine to prohibit testimony or evidence regarding the alleged molestation of A.M., asserting that such evidence "would be introduced for the sole purpose of contradiction," making it "improper impeachment on a collateral matter." Appellant opposed the State's motion on grounds that keeping this information from the jury would deny Appellant his constitutional rights to a fair trial and to confrontation of adverse witnesses. Appellant argued that excluding this evidence "would result in the jury being misled . . . concerning the precise allegations about the nature and circumstances of the charged offenses in this case as stated by the alleged child victim, K.M." Appellant further asserted that K.M.'s accusation regarding A.M. was critical to presenting "the circumstances of the charged offenses in this case" and was not evidence related to a collateral matter. Appellant further argued that, under the rule of completeness, the evidence must be admitted, as it was inextricably intertwined with K.M.'s accusations regarding the charged crimes against Appellant.

The trial court granted the State's motion in limine, finding that "the evidence sought to be excluded by the State . . . and sought to be introduced by [Appellant], is intended solely for contradiction, does not go to the issue of the victim's bias, corruption, or lack of competency, and is not relevant to any particular material issue in this case."

Section 90.608, Florida Statutes, provides that Appellant can "attack the credibility of a witness" by "[p]roof by other witnesses that material facts are not as testified to by the witness being

3

impeached." Contrary to the rationale of the trial court, or the arguments by the State, such evidence would not have injected a collateral issue into the case or improper collateral crime evidence, as K.M.'s allegations regarding A.M. were inextricably intertwined with K.M's allegations that they were both molested by Appellant. Evidence of a collateral crime is admissible as relevant evidence if it is inextricably intertwined with the charged crime. *Dorsett v. State*, 944 So. 2d 1207, 1213 (Fla. 3d DCA 2006). This is so, because it occasionally "becomes necessary to admit evidence of other bad conduct to adequately describe the offense or connect the elements of the offense because the charged offense and the other conduct are significantly linked in time and circumstance." *Wright v. State*, 19 So. 3d 277, 292 (Fla. 2009). Specifically, collateral crime evidence is inextricably intertwined, if it is "necessary to (1) 'adequately describe the deed'; (2) provide an intelligent account of the crime(s) charged; (3) establish the entire context out of which the charged crime(s) arose; or (4) adequately describe the events leading up to the charged crime(s)." *Dorsett*, 944 So. 2d at 1213 (emphasis and citations omitted). Here, K.M.'s testimony that Appellant abused her and A.M., in each other's presence, was inextricably intertwined, because it was necessary to adequately describe the criminal episode involving both victims.

The State did not charge Appellant regarding the allegations that he abused A.M., and inextricably intertwined evidence can involve other crimes that the State may decide in its discretion are not worthy of prosecuting. In *Griffin v. State,* numerous incidents of uncharged crimes were admitted against the defendant, but the Florida Supreme Court rejected the defendant's arguments that the evidence was improper similar fact evidence, but instead was relevant evidence to show "the entire context out of which the crime arose" – i.e., inextricably intertwined. 639 So. 2d 966, 969 (Fla. 1994).

In *Kane v. State*, the lower court allowed the State to present photographs the defendant took of the victim before and after the sexual abuse he was charged of committing. 975 So. 2d 1277, 1281 (Fla. 4th DCA 2008). The Fourth District held the evidence admissible as "inextricably intertwined with the crimes charged":

The photographs are thus inseparable crime evidence, linked together in time, place, and circumstance with the charged sex offenses. They show the entire context in which the molestation occurred. They depict appellant's unnatural and indecent disposition towards his daughter and document the scene of the abuse she suffered throughout her childhood.

*Id.* Here, K.M.'s testimony about how Appellant would sexually abuse one or both of the girls while they were both in the room was necessary to establish the context out of which the crimes arose.

The facts here make this case clearly distinguishable from the supreme court's decision in *Pantoja v. State,* 59 So. 3d 1092 (Fla. 2011), and our decision in *Roebuck v. State,* 953 So. 2d 40 (Fla. 1st DCA 2007). In both cases, the defendants attempted to discredit the victims' testimony by introducing evidence through cross-examination that the victims had previously made false criminal allegations about *third parties*. That is not the basis for the admission of the testimony at issue here. Rather, Appellant correctly argues that the evidence that K.M. stated that *Appellant* sexually abused both her and A.M. is inextricably intertwined with the accusation that Appellant sexually battered K.M. Furthermore, as we stated in *Roebuck,* to exclude evidence of false reporting involving the defendant himself would implicate due process protections and a defendant's constitutional right to confront his or her accusers. *Roebuck*, 953 So. 2d at 44 (citing *Coco v. State,* 62 So. 892 (Fla. 1953)). While we need not address that issue in light of our holding, we recognize the observation in *Roebuck* that, unlike here, the evidence there "lacked the necessary relevance needed to amount to a due process violation." *Id.* Thus, we reverse the trial court's ruling excluding the evidence that Appellant also sexually abused A.M. and A.M.'s denial that such abuse occurred.

REVERSED and REMANDED for a new trial.

WINSOR, J., concurs with opinion; WINOKUR, J., concurs in part and dissents in part with opinion.

5

_Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331._

WINSOR, J., concurring.

From the beginning, K.M. maintained that every time Macomber molested her, he also molested his own daughter. She said this in her initial interview: "[E]very time he did it to me he would do it to her, too." She said it again during her subsequent deposition: "[E]very time it happened to me it happened to [her]." The record includes no indication she ever retracted this version of events. Yet the jury never heard that version—or evidence directly refuting it. (Macomber's daughter has always maintained she was not molested, contrary to K.M.'s allegations.) I cannot conclude that K.M.'s insistence that Macomber's daughter was molested with her was merely an ancillary point. It is not like whether a victim was wearing exercise clothes or pajamas, *cf. Anderson v. State*, 133 So. 3d 646, 647 (Fla. 1st DCA 2014), or whether a rape victim initially entered the perpetrator's home voluntarily, *cf. Mills v. State*, 681 So. 2d 878, 880 (Fla. 3d DCA 1996). Instead, the details of K.M.'s allegations—including her claim that there was a second victim molested with her—were material and critical.

Whether there were one or two victims is no less material than whether there were one or two perpetrators. Had K.M. maintained that Macomber and another person molested her together, Macomber would be permitted to present testimony refuting that. In other words, Macomber could present testimony that the material facts could not be as K.M. said they were. It does not get less collateral than that.[*] *Cf. Jeancharles v. State*,

---

[*] The dissent addresses a hypothetical and suggests that "if K.M. had testified that a fictional character was in the room when Macomber molested her and that Macomber molested the fictional character too," evidence of that testimony's impossibility

6

25 So. 3d 656, 658 (Fla. 4th DCA 2010) (rejecting argument that impeachment of alibi witness was on collateral matter; "the defendant's whereabouts at about 9:00 p.m. was clearly a critical issue"). The defense should have been allowed to present evidence about K.M.'s insistence that Macomber's own daughter was molested with her, a critical component of K.M.'s accusation.

––––––––––––––––––––––––––––––

WINOKUR, J., concurring in part and dissenting in part.

I join the majority with regard to the admissibility of K.M.'s pretrial statement. I do not agree, however, that the trial court abused its discretion in excluding evidence of Macomber's alleged molestation of A.M.

As the majority opinion correctly notes, a court's decision to exclude testimony is generally reviewed for abuse of discretion. *See Globe v. State*, 877 So. 2d 663, 672 (Fla. 2004). This discretion, as again the majority opinion notes, is limited by the rules of evidence. *See Bearden v. State*, 161 So. 3d 1257, 1263 (Fla. 2015). In other words, if a trial court simply misapplies a specific evidence statute, its order is not really discretionary but is reviewed *de novo*. But perhaps no evidentiary decisions are left more to the trial judge's discretion than whether evidence is "relevant," and whether relevant evidence is admissible. This is primarily because the rules of evidence are vague in describing what evidence is "relevant," or what relevant evidence should be

––––––––––––––––––––––––––––––

would be unnecessary and that the issue would be one of witness competency. But consider a more likely hypothetical: a victim alleges *two* people simultaneously abused her and there is ample evidence that one of those people (the one uncharged) could not possibly have been present. Presumably, the dissent would leave it up to the trial judge to decide whether this was an important feature that the defense could address—or whether the defense would be precluded from any mention of the second person, leaving the jury to suppose there was only one perpetrator.

7

admitted. *See* § 90.401, Fla. Stat. ("Relevant evidence is evidence tending to prove or disprove a material fact."); § 90.403, Fla. Stat. ("Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.").

This vagueness lends itself to wide discretion by the trial judge in determining whether evidence is relevant and admissible, which often requires this Court to affirm the trial court's decision to admit or to exclude evidence on this ground, even if we might have ruled differently. By reversing this conviction, we have ruled that no reasonable judge could have determined that the disputed evidence did not tend to prove or disprove a material fact, or could have determined that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice or confusion of the issues. I disagree. It was surely a difficult decision to weigh the offered evidence and conclude that it was not relevant, or that the danger of unfair prejudice or confusion outweighed its probative value. I find that the trial court acted within its broad discretion in making this difficult determination.

I.

The State charged Macomber with committing sexual crimes upon K.M. The State did *not* charge Macomber with any crimes related to A.M. The State filed a motion in limine stating that it believed Macomber would attempt to introduce evidence or elicit testimony that "during the time [he] was alleged to have committed molestation on K.M., he was also molesting A.M." and that he would then call A.M. to rebut that testimony. The State argued that such testimony was inadmissible as an "attempt to elicit improper impeachment on a collateral matter." Macomber responded that exclusion of this evidence would constitute a denial of his constitutional rights[*] and would mislead the jury

---

[*] I place little credence in Macomber's contention that the trial court was obligated to admit the disputed evidence because it impacted his constitutional right to introduce exculpatory evidence. All evidence offered by a criminal defendant is intended

8

about the allegation against him, because K.M. had stated that 1) A.M. witnessed the sexual abuse of K.M., and 2) Macomber also sexually abused A.M.

Regarding Macomber's first point, it should be noted that A.M. did testify for him. K.M. had earlier testified that A.M. witnessed Macomber sexually battering K.M. However, A.M. was permitted to deny K.M.'s contention that she, A.M., had ever seen Macomber battering K.M. In other words, A.M. was permitted to testify regarding the specific charge against Macomber, contradicting K.M.'s statement that A.M. saw it happen. However, regarding the uncharged crime that Macomber allegedly committed upon A.M., the trial court granted the State's motion to exclude such evidence:

> The court concludes that the evidence sought to be excluded by the State . . . and sought to be introduced by [Macomber], is intended solely for contradiction, does not go to the issue of the victim's bias, corruption, or lack of competency, and is not relevant to any particular material issue in this case.

In other words, the trial court weighed the State's claims against Macomber's, and concluded that the alleged molestation of A.M. did not prove or disprove that Macomber molested K.M., and therefore found it irrelevant and inadmissible.

## II.

to be exculpatory. A court is not obligated to ignore the rules of evidence and admit inadmissible evidence merely because it is offered by a criminal defendant. *See United States v. Scheffer*, 523 U.S. 303, 308 (1998) (holding that "rules excluding evidence from criminal trials" "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve'") (citations omitted). Other than making a broad claim that exclusion of this evidence compromises his "right to confrontation and due process," Macomber did not identify any particular reason why a finding that the disputed evidence is irrelevant is arbitrary or disproportionate.

It appears that Macomber sought permission to introduce two pieces of testimony: 1) that he be permitted to ask K.M. on cross-examination whether he sexually battered A.M. when he battered K.M.; and 2) that he be permitted to ask A.M. on direct examination whether he ever sexually battered her. Presuming that K.M. would have answered that Macomber sexually battered A.M. when he battered her, Macomber then wished to contradict that answer with A.M.'s testimony that he never sexually battered her. I believe the court did not abuse its discretion in excluding both pieces of testimony.

### A. K.M.'s testimony

Under the collateral-impeachment rule in the criminal context, if a party elicits cross-examination testimony that is collateral to the charged crime, the witness's answer is conclusive and the party may not introduce evidence to impeach such testimony. *See Griffin v. State*, 827 So. 2d 1098, 1099 (Fla. 1st DCA 2002). As a corollary, a party may not elicit cross-examination testimony if introduced solely to contradict it with extrinsic evidence. *Correia v. State*, 654 So. 2d 952, 954–55 (Fla. 4th DCA 1995). Thus, the first issue is whether the court abused its discretion in determining that K.M.'s proferred testimony that Macomber molested A.M. was "collateral" in that it was offered solely to contradict it with A.M.'s testimony, and therefore irrelevant.

Macomber did not wish to elicit testimony from K.M. that he molested A.M. in a direct attempt to disprove the charged crime. That would be irrational: testimony that Macomber molested A.M. would do nothing to disprove that he molested K.M., and in fact would probably harm him. Rather, Macomber argued that such evidence, when contradicted by A.M.'s denial, would negatively affect K.M.'s credibility and allow the jury to determine whether K.M. or A.M. was telling the truth.

"The test for determining whether a matter is collateral or irrelevant 'is whether the proposed testimony can be admitted . . . for any purpose independent of the contradictions.'" *Alexander v. State*, 103 So. 3d 953, 954 (Fla. 4th DCA 2012) (citations omitted). "Two types of evidence pass this test: 1) facts relevant to a particular issue; and 2) facts which discredit a witness by

10

pointing out the witness's bias, corruption or lack of competency." *Anderson v. State*, 133 So. 3d 646, 647 (Fla. 1st DCA 2014) (citation omitted). Macomber did not suggest that the proffered testimony of K.M. demonstrated her bias, corruption, or lack of competency; he sought it only to impeach her credibility. And, as stated, testimony that Macomber molested A.M. was not independently relevant to prove that he did not molest K.M. For these reasons, the court did not abuse its discretion in ruling that the disputed evidence was collateral and irrelevant. *See also Griffin*, 827 So. 2d at 1099 (holding that the disputed impeaching cross-examination "had no relevance to the central issue concerning the guilt or innocence of the Appellant"); *United States v. Payne*, 102 F.3d 289, 294-295 (7th Cir. 1996) (holding that impeaching testimony was collateral where it was not related to the central issue concerning defendant's guilt or innocence). As such, the trial court did not abuse its discretion in ruling that K.M.'s testimony was collateral and irrelevant.

While he never argued it below, Macomber also suggested at oral argument that K.M.'s testimony that he molested A.M. was inherently incredible due to the taboo against incest. Thus, the very fact that K.M. made that claim would impeach her credibility. However, if this were true, it would not require A.M.'s testimony contradicting it; the mere fact that she made an outlandish accusation would have been enough to affect K.M.'s credibility negatively. For instance, if K.M. had testified that a fictional character was in the room when Macomber molested her and that Macomber molested the fictional character too, Macomber would not need to present a witness to testify that the character was not real. The mere fact that K.M. said it would impeach her credibility.

Such testimony suggests the witness's lack of competency. In such a case, the evidence would be admissible. *See Anderson*, 133 So. 3d at 647 (a fact that discredits a witness by pointing out lack of competency is not collateral and may be used for impeachment); § 90.608(4) & (5), Fla. Stat. Under section 90.608, a party may attack the credibility of a witness by "[s]howing a defect of capacity . . . in the witness to observe, remember, or recount the matters about which the witness testified." Testimony that Macomber molested a fictional character could

11

touch on the witness's competency to testify and be admissible. Conversely, the court here could have found that K.M.'s claim that Macomber molested A.M. was not so inherently incredible that it implicated K.M.'s competency.

A simple rule would apply this standard: if the witness's credibility is not negatively impacted by the disputed testimony *unless it is contradicted*, then the disputed testimony is collateral. Here, in spite of Macomber's suggestion that the taboo against incest renders K.M.'s testimony inherently incredible, the trial court could reasonably have concluded that it was not, that it did not impeach K.M. without A.M.'s contrary testimony, and found the testimony collateral and irrelevant.

### B. *A.M.'s testimony*

As stated, the court did not abuse its discretion in determining that K.M.'s proffered testimony regarding Macomber molesting A.M. was collateral. And if this evidence was collateral, it could not be contradicted by A.M.'s testimony. *See Foster v. State*, 869 So. 2d 743, 745 (Fla. 2d DCA 2004) ("Generally, impeachment on a collateral issue is impermissible."). Therefore, the court did not abuse its discretion in excluding A.M.'s testimony contradicting K.M.'s account of abuse of A.M.

The majority opinion distinguishes cases on which the State relied, noting that those cases involved impeachment testimony that a witness "had previously made false criminal allegations about *third parties*." *Maj. op.* at 5. In other words, according to the majority, because the molestation of A.M. allegedly occurred in the same episode as the molestation of K.M., evidence relating to the molestation of A.M. was not collateral. But in fact, courts apply the collateral impeachment rule even when the evidence occurred in the same episode as the charged crime. *See e.g., Anderson*, 133 So. 3d at 647 (holding that identity of victim's clothing at time of sexual battery is collateral); *Foster*, 869 So. 2d at 745 (holding that the question of whether the defendant's car brakes were functional in a leaving the scene of the accident prosecution is collateral); *Mills v. State*, 681 So. 2d 878, 880 (Fla. 3d DCA 1996) (holding that the question of whether a sexual battery victim voluntarily entered the defendant's residence is collateral).

12

Indeed, the fact that the disputed evidence here involved the same episode as the charged crime impacts the question whether it was collateral. But this fact alone is not enough. Even if the disputed evidence occurred in the same episode as the charged crime, the trial court could still properly find that the disputed evidence was collateral. For example, a witness may make all sorts of observations when talking to police about a charged crime. A court must be able to rule that some of those observations are collateral to the charged crime, and cannot be introduced in cross-examination or impeached with extrinsic evidence, in order to ensure the efficiency of trials. A trial court is charged with determining whether such observations are collateral, or are important to the offense. The court did so here, and we should not second-guess it. Taking all of the factors into consideration, the trial court did not abuse its discretion in finding that the disputed evidence was collateral and irrelevant.

## III.

Although the disputed evidence here involved a collateral crime allegedly committed by Macomber, the majority finds that the evidence is nonetheless admissible because it is "inextricably intertwined" with the charged crime. Because a court does not abuse its discretion admitting such inextricably intertwined crimes, the majority finds, conversely, that the trial court here *did* abuse its discretion in excluding evidence of the collateral crime. This analysis suffers from two flaws. First, it confuses the "collateral impeachment" rule with the "collateral crime" rule. Second, it misapplies the collateral-crime cases on which it relies.

Evidence of collateral crimes is "inadmissible when the evidence is relevant solely to prove bad character or propensity." *Wright v. State*, 19 So. 3d 277, 291–92 (Fla. 2009). However, evidence of collateral crimes is admissible "to adequately describe the offense or connect the elements of the offense because the charged offense and the other conduct are significantly linked in time and circumstance." *Id.* at 292. In this instance, it is said that the collateral crime is "inextricably intertwined" with the charged crime, and may be admitted. *Id.* The majority finds that the alleged crimes against A.M. are inextricably intertwined with the

13

charged crime, and therefore must be admitted. I disagree that this rule requires admission here.

First, Macomber tried to introduce this evidence not because it would help "adequately describe the (charged) offense," but because it would impeach K.M.'s testimony. The State did not argue against admission because it was a collateral crime offered to prove propensity. The possibility that the disputed evidence here *is* a collateral crime inextricably intertwined with the charged crime has nothing to do with Macomber's reason for introducing it, or with the State's reason for objecting to it, or with the trial court's reason for excluding it. Macomber specifically wanted the collateral crime to demonstrate that the victim was lying. Whether she was lying is irrelevant to whether the collateral crime is inextricably intertwined with the charged crime. The fact that the evidence may have been admissible under the collateral-crime rule has nothing to do with the fact that the evidence was collateral and offered solely for the purpose of impeachment and cannot be contradicted by extrinsic evidence, which is why the court excluded it. A collateral crime can still be inadmissible if it is collateral impeachment. These concepts have little in common, except that they both use the word "collateral."

Second, even if the majority were correct that we should analyze this case under the collateral-crime rule, the cases the majority cites do not support the conclusion that the trial court here erred in excluding the evidence. The majority cites *Dorsett v. State*, 944 So. 2d 1207, 1213 (Fla. 3d DCA 2006); *Wright*, 19 So. at 292; and *Griffin v. State*, 639 So. 2d 966, 969 (Fla. 1994), for the general proposition that the trial court may admit, over defense objection, evidence offered by the State that the defendant committed an uncharged crime on the ground that it is inextricably intertwined with the charged offense. While true, this statement does not apply here. Those cases merely ruled that the trial court did not abuse its discretion in admitting the disputed evidence. But a ruling that a trial court *may* exercise its discretion by admitting evidence does not mean that a court *must* admit this evidence, or that excluding the evidence constitutes an abuse of discretion. In many cases, neither admission of evidence nor exclusion of the same evidence constitutes an abuse of discretion. Thus, even if the inextricably-intertwined crime rule

14

were the issue (which it is not), the cases do not support the proposition that the court here abused its discretion in excluding the disputed evidence.

The court here made the difficult choice that the disputed evidence was collateral and irrelevant and could not be impeached. The decision was, at the least, reasonable. That is all required to affirm the ruling, even if another judge could properly reach the opposite conclusion. For this reason, I would find that the trial court did not abuse its broad discretion in excluding the evidence, and affirm Macomber's judgment and sentence.

_____

Andy Thomas, Public Defender, Glen P. Gifford, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, Trisha Meggs Pate, Tallahassee Bureau Chief, Criminal Appeals, Robert Lee, Assistant Attorney General, Tallahassee, for Appellee.