834 So.2d 940 (2003)
Earl STOTLER, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-814.
District Court of Appeal of Florida, Fourth District.
January 22, 2003.
*941 Carey Haughwout, Public Defender, Nan Ellen Foley, and Paula Parisi, Assistant Public Defenders, West Palm Beach, for appellant.
Charlie Crist, Attorney General, Tallahassee, and Claudine M. LaFrance, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, J.
Earl Stotler appeals his convictions for burglary of a structure and contributing to the delinquency of a child. The theory of the state's case was that Stotler was a principal to the criminal acts of his girlfriend, Julie Napier. We reverse, holding that the trial court erroneously restricted Stotler's cross-examination of Napier.
The crimes occurred at 4:00 a.m. at a closed gas station. The entire incident was captured on a surveillance videotape positioned inside the station and facing the cashier's window. The tape was published to the jury through the testimony of Officer Brian Avila, who retrieved the tape from the gas station at 7:00 a.m. on the morning of the crimes.
The tape depicts Napier approaching the cashier's window and inserting her arm into the round opening in the middle of the window. She grabbed some items and walked away. Napier returned with a walking cane and stuck it into the opening. Next, Stotler appeared with his son. He took the cane away from Napier, stood by a few moments, looked around, and walked away. Napier continued to steal merchandise without the cane while Stotler's son *942 stood nearby. The tape next depicts Napier walking past the window followed by Stotler, who briefly peered inside. Napier took the cane from Stotler, who looked around, and took the cane back. The two of them then disappeared from view. Napier returned without the cane, took some more merchandise and left. She then returned with the cane and appellant's son. Appellant's son also tried to reach into the opening to take merchandise. Napier returned one final time with the cane but was unsuccessful. Stotler is last shown looking briefly inside the window and walking away. The tape then shows them driving away.
At no time does the tape depict Stotler reaching into the window opening. All of the conversation on the tape was inaudible; the trial judge described it as sounding "like the chipmunks, Alvin, Theodore, and Simon."[1]
The state called Napier as a witness. She viewed the videotape while on the witness stand and testified that it was "a true and accurate representation" of what occurred at the gas station. She identified Stotler as being the man on the tape and six-year-old Shane Stotler as the child. Napier stated that Stotler had picked her up at a friend's house at 3:30 a.m. and that they stopped at the gas station on their way home. She testified that she took "[s]ome lighters and some phone cards" worth $1,200 from the gas station.
On cross-examination, Napier testified that they stopped at the gas station for Stotler to use the phone; Napier removed the cane from the car while Stotler was using the telephone. They had no conversation at that time. The trial judge granted the state's motion in limine and prevented the defense from questioning Napier about Stotler's statements during the burglary. The following colloquy occurred during the cross-examination of Napier:
Q And where was Earl Stotler when you went to look in the window of the door?
A He's following right behind me.
Q And was he saying anything to you?
A He was wanting to leave.

[STATE]: Objectionobjection, Your Honor.
THE COURT: Sustain the objection.
...
Q And was there any discussion between you and Earl Stotler before you got out of the car?
A I told him I was going
[STATE]: Objection, Your Honor.
THE COURT: Sustain the objection. Ma'am, you can
THE WITNESS: Yes sir.
THE COURT: You cannot testify as to the contents of the conversations, just was there conversation.
...
Q Okay. Did Mr. Stotler sugsuggest that you burglarize the gas station?

A No.

[STATE]: Objection, goes to the
THE COURT: I'll sustain
[STATE]: Previous ruling of this Court.
THE COURT: I'll sustain the objection.
Q Did Mr. Stotler suggest that he burglarize the gas station?
*943 [STATE]: Objection, Your Honor, and move for a curative instruction.
THE COURT: I'll susI'll sustain the objection consistent with the Court's previous ruling. Members of the jury, I'll ask you all to disregard that question.
(Emphasis added).
In closing, the state argued that Stotler aided the burglary by acting as the getaway driver and allowing Napier to use the cane. The state further contended that the video showed Stotler acting as a lookout.
We agree with appellant that the trial court erred in ruling that the proposed cross-examination went beyond the scope of direct examination.
Section 90.612(2), Florida Statutes (2001) provides that "[c]ross-examination of a witness is limited to the subject matter of the direct examination and matters affecting the credibility of the witness." To determine the proper scope of a defendant's cross-examination in a criminal case, a court must keep in mind "the expansive perimeters of subject matter relevance which the constitutional guarantee of cross-examination must accommodate to retain vitality." Coxwell v. State, 361 So.2d 148, 152 (Fla.1978). The supreme court has defined the scope of cross-examination:
[W]hen the direct examination opens a general subject, the cross-examination may go into any phase, and may not be restricted to mere parts ... or to the specific facts developed by the direct examination. Cross-examination should always be allowed relative to the details of an event or transaction a portion only of which has been testified to on direct examination. As has been stated, cross-examination is not confined to the identical details testified to in chief, but extends to its entire subject matter, and to all matters that may modify, supplement, contradict, rebut or make clearer the facts testified to in chief.
Zerquera v. State, 549 So.2d 189, 192 (Fla. 1989) (quoting Coxwell, 361 So.2d at 151 (quoting Coco v. State, 62 So.2d 892, 895 (Fla.1953))).
This case falls within the rule of Coco. "[I]f a portion of a transaction ... or event is brought out on direct examination, the remainder can be brought out on cross-examination." CHARLES W. EHRHARDT, FLORIDA EVIDENCE § 612.2 at 54 (2002 ed.). The subject matter of Napier's direct examination was the commission of the burglary depicted on the videotape. Stotler was charged as a principal to Napier's crimes. Section 777.011, Florida Statutes (2001) "treats those who aid, abet, or counsel another to commit a crime the same as if they had committed the crime themselves." State v. Marks, 833 So.2d 249, at 251 (Fla. 4th DCA 2002). The videotape, which Napier authenticated, showed Stotler's physical conduct during the burglary. The voices on the tape were inaudible. What Stotler said immediately before and during the burglary is relevant to his participation in the crime as a principal. The questions quoted above were thus within the subject matter of the state's direct examination since they fell into the gap that had been left in the criminal transaction after the state's direct examination.
The state relies on Steinhorst v. State, 412 So.2d 332 (Fla.1982), but it is not controlling. Unlike this case, the proposed cross-examination in Steinhorst did not involve the circumstances of the crime charged, but rather the marijuana importation conspiracy that provided the background for the homicides there at issue. Also, the defendant in Steinhorst failed to preserve his theory of cross-examination *944 for appeal. This case is similar to the line of cases holding that it is error to preclude cross-examination concerning the details of the criminal conduct that was the subject of direct examination. See Pace v. State, 596 So.2d 1034, 1035 (Fla.1992); Zerquera, 549 So.2d at 192; Coxwell, 361 So.2d at 152.
Finally, we agree with appellant that statements he made during the burglary depicted on the videotape are not hearsay under section 90.801(1)(c), Florida Statutes (2001). They are "statements describing ambiguous acts" or "verbal parts of acts." EHRHARDT, § 801.6 at 688; McCORMICK'S HANDBOOK OF THE LAW OF EVIDENCE § 249 (Edward W. Cleary ed., 3d ed.1984). Stotler's conduct on the tape is open to interpretation. Words that he said at the time of the burglary would "give significance to an otherwise ambiguous act." EHRHARDT, § 801.6 at 689. As McCORMICK explains:
The legal significance of acts taken alone and isolated from surrounding circumstances may be unclear. Thus the bare physical act of handing over money to another person is susceptible of many interpretations. The possibilities include loan, payment of a debt, bribe, bet, gift, and no doubt many other kinds of transactions. Explanatory words which accompany and give character to the transaction are not hearsay.
Id. § 249 at 733; see also Zeigler v. State, 402 So.2d 365, 374 (Fla.1981); Stevens v. State, 642 So.2d 828, 829 (Fla. 2d DCA 1994).
We do not find the limitations on cross-examination to be harmless. The burden is on the state to prove beyond a reasonable doubt that "the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." Goodwin v. State, 751 So.2d 537, 541 (Fla.1999) (quoting State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986)). We cannot say beyond a reasonable doubt that the error did not affect the verdict.
REVERSED.
SHAHOOD, J., and MAASS, ELIZABETH T., Associate Judge, concur.
NOTES
[1] The Chipmunks were the creation of Ross Bagdasarian, a songwriter who released records under the name David Seville. He was "fascinated by the art of recording" and released singles where voices were "sped-up through studio trickery." See The Chipmunks, at http//:www. yesterdayland. com/popopedia/shows/music/mu1156.php (last visited Jan. 13, 2003). Bagdasarian's hits included "Witch Doctor" and "The Chipmunk Song (Christmas Don't Be Late)." Id.