GROSS, J.
Following a jury trial, Reginald Massey was convicted of possession of cocaine and possession of a firearm by a convicted felon. We reverse because the defense was precluded from placing into evidence certain non-hearsay statements of the lead detective and the State’s main witness.
The charges in this case arose from a traffic stop. A detective with the Okeechobee County Sheriffs Office came across a car with two men stopped at a stop sign. The detective recognized Massey as the passenger, whom the detective described as having a “very panicked look in his eye.” The detective then proceeded to follow the car and keep it in sight, during which he eventually witnessed the driver of the car run a stop sign.
The detective conducted a traffic stop and arrested the driver for driving without a valid license. He then searched the car but found “nothing illegal.” Another detective searched Massey and found no illegal narcotics or weapons, just a “large sum of cash.” Massey was released from the scene.
Another officer then told the detective that he found a gun and drugs about 100 yards from the location of the traffic stop, near where the detective had first encountered the car. When the detective asked the driver what had been thrown from the car, the driver stated that it was a “gun or drugs probably, I don’t know.” The State was unable to identify Massey’s fingerprints on the gun.
At trial, the driver of the car testified that it was Massey who threw something out of the window and that he did not know of anything illegal in the car.
*326 The driver’s jailhouse interview with the arresting detective is central to this appeal. After the arrest at the traffic stop, the driver remained in custody. Ten days after the arrest, the detective, who said he made no promises or threats, tape-recorded an interview with the driver. The detective did a majority of the talking during the interview, “going back over what [the driver] had told him.” To illustrate the one sidedness of the discussion, an excerpt is in the footnote below.[1] After the interview, Massey was charged in this case and the driver was released from jail.
At trial, Massey sought to introduce the recorded jailhouse interview. Defense counsel argued that the jury should hear the “manner in which this statement was taken,” to support the defense theory that the driver was “basically going with whatever he [wa]s told or whatever w[ould] assist him in this case,” and that the driver was “following and saying what he ha[d] to say.” In support of this argument, defense counsel explained that the tape recording was not hearsay, since the defense was not seeking to admit it for the truth of the matters asserted in the statement, which placed the blame for the criminal conduct on Massey. The trial judge refused to allow the defense to offer the tape recording, reasoning that it was not im *327 peachment, that the driver’s statements were not inconsistent with his testimony at trial, and that it was “wholesale admission of a hearsay statement.”
I
Massey first argues that the trial court erred in allowing testimony that a search of Massey at the scene of the stop uncovered “a large sum of cash.” At trial, defense counsel’s objection was that such evidence was “irrelevant and prejudicial.” In response, the trial judge informed counsel that there was case law holding such evidence to be admissible and that he thought he could put his hands on it if counsel wanted. Defense counsel told the judge not to “worry about it” and said he would withdraw his objection.
Because Massey was charged only with possession of cocaine, as opposed to sale or trafficking, his objection to the introduction of evidence of a “large sum of cash” discovered during the search of his person at the traffic stop was well taken. See Buitrago v. State, 950 So.2d 531, 532 (Fla. 4th DCA 2007); Ferguson v. State, 697 So.2d 979, 980-81 (Fla. 4th DCA 1997). However, defense counsel did not obtain a ruling from the trial court and ultimately withdrew his objection, so the issue was not preserved for appellate review. See Carratelli v. State, 832 So.2d 850, 856 (Fla. 4th DCA 2002) (noting that “[a] plethora of Florida cases support the notion that a party must obtain a ruling from the trial court in order to preserve an issue for appellate review”); Rios v. State, 920 So.2d 789, 790 (Fla. 5th DCA 2006).
II
We agree with Massey that it was error to exclude the tape recording of the jailhouse interview of the driver because, as offered by the defense, the recording was non-hearsay admissible to contradict the driver’s trial testimony by showing that the driver was a parrot repeating the testimony spoon-fed to him by the detective.
Hearsay is “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” § 90.801(l)(c), Fla. Stat. (2010). The Supreme Court has recognized that a statement may “be offered to prove a variety of things besides its truth.” Foster v. State, 778 So.2d 906, 914-15 (Fla.2000). If an out-of-court statement “ ‘is offered for some purpose other than its truth, the statement is not hearsay and is generally admissible if relevant to a material issue in the case.’ ” Jackson v. State, 25 So.3d 518, 530 (Fla.2009) (quoting Penalver v. State, 926 So.2d 1118, 1132 (Fla.2006)).
No aspect of the hearsay rule is as misunderstood as the second part of the definition of hearsay—that the out of court statement is “offered in evidence to prove the truth of the matter asserted”—which McCormick describes as a “complicated and confusing condition.” McCormick on Evidence § 246 (2d ed. 1972). To explain the rationale for this aspect of the hearsay definition, McCormick looks to the reasons that hearsay is inadmissible in evidence[2], namely
the want of the normal safeguards of oath, confrontation and cross-examination for the credibility of the out-of-court declarant. W, a witness, reports on the stand that D, a declarant, has stated that X was driving a stolen car 60 miles an hour at a given time and place. If the proponent is trying with this evi *328 dence to prove those facts about X’s conduct we are vitally interested in the credibility of D, his opportunity and capacity to observe, his powers of memory, the accuracy of his reporting, and his tendency to he or tell the truth. The want of oath, confrontation and opportunity to cross-examine D may greatly diminish the value of his testimony; the “hearsay dangers” are present. But the same evidence of D’s declaration may be offered for quite different purposes, as for example, to show that D at the time he spoke, was conscious, or was able to speak English, or as evidence of the utterance by D of defamatory statements in an action for slander brought by X. Where offered for these purposes, the evidence would still be evidence of an out-of-court statement by D, but its value would not at all hinge upon D’s credibility. Hence, when declarations are offered for these purposes, the want of safeguards for his credibility is of no consequence. We are interested only in the question, did D speak these words, and for that we have the testimony of W, on the stand, fully supported by all the safeguards.
Id. (footnotes omitted). Out-of-court statements may be offered for a multitude of purposes other than to prove the truth of the facts asserted in them. Florida has recognized these common types of non-hearsay utterances: (1) prior inconsistent statements, because they are “not offered to prove [their] truth, only to show the inconsistency for impeachment purposes,” K.P. v. State, 90 So.3d 890, 891 (Fla. 4th DCA 2012) (quoting Marshall v. State, 68 So.3d 374, 375 (Fla. 5th DCA 2011)) (internal quotations omitted); (2) statements offered to prove motive, Foster v. State, 778 So.2d 906, 915 (Fla.2000), Eugene v. State, 53 So.3d 1104, 1109 (Fla. 4th DCA 2011); (3) statements used to establish an element of a crime, S.D.T. v. State, 33 So.3d 779, 780 (Fla. 4th DCA 2010); (4) statements that describe and give significance to ambiguous acts, Stotler v. State, 834 So.2d 940, 944 (Fla. 4th DCA 2003); (5) statements that are “verbal acts,” such as the words of an oral contract or of slander, which have “independent legal significance” because “the law attaches duties and liabilities to their utterance,” A.J. v. State, 677 So.2d 935, 937 (Fla. 4th DCA 1996); and, (6) statements offered to show the state of mind of, or notice to, the listener, Dorsey v. Reddy, 931 So.2d 259, 267 (Fla. 5th DCA 2006); Alfaro v. State, 837 So.2d 429, 432 (Fla. 4th DCA 2002). See generally Charles W. Ehrhardt, Florida Evidence §§ 801.4, 801.6 (2012 ed.).
In this case, the defense’s proposed introduction of the tape recording was not hearsay because it was not offered to prove the truth of the matters contained in the driver’s jail house “statement” to the police; if taken as true, the taped statements established Massey’s guilt of the crimes charged. Rather, the detective’s statements were important because of how they were made; they supported the defense theory that the detective supplied the driver with the testimony the State wanted, so that, at trial, the driver would merely repeat this version of the facts. The detective could have authenticated the tape recording since he was present at its creation. Used in this manner, the tape contradicted the testimony of the driver, because it tended to show that the true facts were not “as testified to by the witness being impeached.” § 90.608(5), Fla. Stat. (2010).
Not finding the error in excluding the testimony to be harmless, we reverse and remand for a new trial.
DAMOORGIAN, J., and STONE, BARRY J., Senior Judge, concur.

.
Detective: Okay. Uh, now from where I was at I can look over and see him in the passenger side of your vehicle.... I can see him. He’s reaching — he's looking down, he’s looking over at me, he's looking down, he's looking over at me, we’re parallel to each other. You’re driving obviously and he’s looking over at me. And then is when were [sic] initially saw me, you come across the road and keep going. We turn — we meet like — you actually waited till I got down to the stop, then you turned beside. I go to turnaround [sic], that's when you come down and you ran the stop sign down here at 5th and 10th — or 4th and 10th, I’m sorry. You went back west on 10th. After I had got you stopped, you advised me you had no ... you had a ... Jamaican license you said. Uh, didn't have your license with you nor did you have your passport with you, you told me that. Uh, I verified through dispatch you had no ... U.S. license. Uh, I asked for consent to search the vehicle, you said no problem. You gave me verbal consent to search, is that correct?
Driver: Yes sir.
[[Image here]]
Detective: ... I asked you if he threw something out the window, you said, yes. Is that correct?
Driver: I said he threw something but I don't know what it was.
Detective: Right. When I asked you I said, do you know what it was? You said, I don’t know, but he did throw something out. I said, well, what did he throw? You said, I don't know, but it was wrapped in black shirt. Is that correct? Is that what you said?
Driver: Yes.
Detective: I'm sorry, I couldn’t hear you. Driver: Yes sir.
Detective: Okay. Then I asked you where he threw it and you said over there and you kind of motioned in a general direction. I said, no, no, point to it. And you pointed over to a particular area, did you or did you not?
Driver: Yes sir.
Detective: You did?
Driver: Yes.
Detective: Okay. Uh, that is the area where I found the gun — a loaded nine millimeter and a, uh, 26.7 grams of crack cocaine. Uh, you advised me at the time that you did not see the gun, uh, or the dope. He had something in a black shirt and he threw something out, but you don't know what it was. Uh, I asked you what you thought it was and your response was what? ... Uh, according to you when asked why Massey, uh, let me just give an exact what you told me. Let me see. When I asked [the driver] what he thought Massey threw from the gun — threw from the car he stated, a gun and drugs probably. When I asked why he would say a gun and drugs, because at that point nothing had been mentioned about either one of them, uh, you stated that’s normally what gets thrown from a car when a cop stops you. Is that correct? Driver: Yes sir.

. Section 90.802, Florida Statutes (2010) provides that, "[e]xcept as provided by statute, hearsay evidence is inadmissible.”