# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D2023-0496
_____

GREGORY D. JONES JR.,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____


On appeal from the Circuit Court for Alachua County.
James M. Colaw, Judge.

May 1, 2024


B.L. THOMAS, J.

The trial court denied Appellant's motion for postconviction relief, filed under Florida Rule of Criminal Procedure 3.850. For the reasons outlined below, we affirm the order on appeal.

The State charged Appellant with attempted second-degree murder (count I), possession of a firearm by a convicted felon (count II), and carrying a concealed firearm (count III). The victim and two of his friends, Patricia Palmer and Andrew James, were on their way to a party, with the victim riding in the back seat of a vehicle being driven by James. While they were traveling to the location of the party, a pedestrian Dantae Flagg—Appellant's cousin—complained that James's vehicle had almost struck him. Flagg and the victim exchanged words. James then drove away. At

the next red light, Flagg and some other men, including Appellant, approached the vehicle, and another verbal altercation ensued. The victim claimed at trial that he became afraid that the people on foot planned to attack him and the others inside the car, and so he tried to leave the vehicle. Although the victim did not remember what happened after he stepped out of the car, witnesses to the incident then heard gunshots.

The victim was shot five times. Flagg and his companions ran from the scene towards a black car parked nearby. Appellant ran in a different direction.

Shortly thereafter law enforcement stopped the black car and detained the two people in it, Flagg and another man. Appellant was not in the vehicle. The police found a Tommy Hilfiger hat near the place where the vehicle had been parked. Found near the hat was a handgun with its magazine missing. The one bullet remaining in the chamber of the gun matched the brand and caliber of the casings found near the victim.

Palmer testified that she saw the victim arguing with Flagg, and less than a minute after the victim got out of the car, she heard gunshots and saw the victim fall. She identified Flagg as the pedestrian who bumped into the car because she had the best view of him during the incident, and he was the person closest to the victim at the time of the shooting. James testified that he did not see the men on foot approach the vehicle or notice that the victim had exited the vehicle until the victim was a few steps away from it. When James saw the men coming towards the vehicle, he started to open his own door to help the victim. His hand was still on the door handle when he heard the gunshots. He did not see the shooting, only flashes coming from the passenger side of the vehicle.

The police originally suspected that the shooter was Flagg. However, Appellant confessed in a police interview to shooting the victim, though he claimed that he did so only to protect Flagg. Appellant told police that he saw Flagg get into an argument after Flagg walked in front of James's vehicle.

Flagg testified that he, Appellant, and two other men went to a club where they were patted down by a bouncer before entering.

2

After they left the club, James's vehicle nearly struck Flagg when a traffic light changed from green to red while he was crossing the intersection. Appellant was walking a little way behind Flagg. Flagg testified that the people in the vehicle started screaming at him to get out of the road and that when he tried to walk away, the vehicle came around the corner and cut him off. The victim got out of the back seat and walked quickly towards Flagg. The victim had his hands in his pants, with his shirt covering his hands. Flagg did not see the victim carrying a weapon. Flagg testified that he then turned and walked away, and as he did so, he heard gunshots somewhere close to him.

The State played a recording of a police interview in which Flagg had said that after the shots were fired, one of the people running was a man in blue clothes with a blue Tommy Hilfiger hat on. He said he was not sure who the man was. Later in the interview, Flagg said that the victim was "speed walk[ing]" towards him, and that he saw the man in blue take a gun out of his pants and shoot the victim. Flagg referred to the man in blue as "L.G." When a detective asked Flagg if the victim deserved to be shot, Flagg answered, "Of course he didn't." The State introduced a post from Appellant's Facebook page into evidence. The post showed an album cover with Appellant's picture on it and the initials "L.G."

Surveillance footage near the scene of the crime showed Appellant running after the shooting while wearing a blue shirt. This security footage also showed Appellant tossing his hat into the courtyard before leaving.

A DNA analysis was conducted on the recovered firearm, which produced a mixed profile of two donors. The only definitive conclusion that the FDLE lab tests drew was that Flagg was not one of the contributors.

At the end of the trial, the jury found Appellant guilty of all three counts, expressly finding that Appellant actually possessed a firearm, discharged it, and caused great bodily harm in doing so. The trial court imposed concurrent terms of imprisonment: life in prison on count I, fifteen years on count II, and five years on count III. This Court affirmed Appellant's convictions and sentences per

curiam on direct appeal without opinion. *See Jones v. State,* 296 So. 3d (Fla. 1st DCA 2020).

The Appellant raised five claims below: three claims of ineffective assistance of counsel, one claim of cumulative error, and an argument that the trial court imposed an illegal life sentence because it improperly reclassified his offense to a first-degree felony punishable by life in prison.

Appellant's primary claim is that counsel was ineffective for failing to object to alleged hearsay statements the State introduced through law enforcement testimony. To prove ineffective assistance of counsel, a defendant must allege (1) the specific acts or omissions of counsel which fell below a standard of reasonableness under prevailing professional norms and (2) that the defendant's case was prejudiced by these acts or omissions. *Strickland v. Washington*, 466 U.S. 668, 690–94 (1984). To prove the first prong, "[t]he defendant must allege specific facts that, when considering the totality of the circumstances, are not conclusively rebutted by the record and that demonstrate a deficiency on the part of counsel which is detrimental to the defendant." *Blackwood v. State*, 946 So. 2d 960, 968 (Fla. 2006) (quoting *LeCroy v. Dugger*, 727 So. 2d 236, 239 (Fla. 1998)). The prejudice prong requires that the defendant demonstrate a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The defendant must show a likelihood of a different result which is substantial and not just conceivable. *Harrington v. Richter*, 562 U.S. 86, 112 (2011). If the defendant fails to satisfy one prong of the *Strickland* analysis, it is not necessary to consider the other prong. *Waterhouse v. State*, 792 So. 2d 1176, 1182 (Fla. 2001).

Appellant contended that his trial counsel should have objected to the State's use of out-of-court statements that Flagg made to law enforcement, including several full interviews. Appellant argued that without the improper introduction of these statements, the State could not have argued that an eyewitness watched Appellant shoot the victim or have emphasized that Flagg said that he did not think the victim deserved to be shot.

4

We hold that Appellant's claim is meritless. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. "The hearsay rule does not prevent a witness from testifying as to what he has heard; it is rather a restriction on the proof of fact through extrajudicial statements." *Dorsey v. Reddy*, 931 So. 2d 259, 266 (Fla. 5th DCA 2006) (quoting *Breedlove v. State*, 413 So. 2d 1, 6 (Fla. 1982)). "If an out-of-court statement 'is offered for some purpose other than its truth, the statement is not hearsay and is generally admissible if relevant to a material issue in the case.'" *Massey v. State*, 109 So. 3d 324, 327 (Fla. 4th DCA 2013) (quoting *Jackson v. State*, 25 So. 3d 518, 530 (Fla. 2009)). "The hearsay objection is unavailing when the inquiry is not directed to the truth of the words spoken, but, rather, to whether they were in fact spoken." *Breedlove*, 413 So. 2d at 6.

A party generally cannot call a witness solely for the purpose of impeaching that witness with inconsistent prior statements. *Morton v. State,* 689 So. 2d 259, 262 (Fla. 1997), *receded from on other grounds in Rodriguez v. State,* 753 So. 2d 29, 47 (Fla. 2000). But "[i]n a case where a witness gives both favorable and unfavorable testimony, the party calling the witness should usually be permitted to impeach the witness with a prior inconsistent statement." *Morton*, 689 So 2d at 264.

Flagg's trial testimony was not wholly inconsistent with his prior statements, nor was it entirely adverse to the State's case. The State did not introduce Flagg as a witness solely to impeach him. Thus, under *Morton,* the State had a right to impeach Flagg with those prior inconsistent statements. Appellant's trial counsel had no legal grounds on which to object and was not ineffective for failing to make a meritless objection.

In his second ground, Appellant argued that trial counsel was ineffective for failing to object to Detective Mullins testifying that an undisclosed number of non-testifying witnesses and Flagg's own attorney told him that Flagg was not the shooter. Appellant argued this was inadmissible hearsay and that counsel should have objected to the statements. In Appellant's third and final ineffectiveness claim, he argued that counsel should have objected to the State asking Flagg if he had ever seen Appellant carrying a

concealed firearm in the past, as this question was designed to elicit improper character evidence. He argued that it prejudiced him because none of the eyewitnesses testified that they saw Appellant shoot the victim, and thus there was a reasonable probability that the trial's outcome would have been different without this line of questioning.[*]

The postconviction court correctly denied these claims as meritless. The State introduced evidence showing that Appellant gave a post-Mirandized statement where he *admitted* to shooting the victim. As a result, the alleged ineffectiveness of counsel did not prejudice Appellant.

Appellant's claim of cumulative error fails because none of his individual claims are meritorious. *See Barnhill v. State*, 971 So. 2d 106, 118 (Fla. 2007) ("Because all of the allegations of individual legal error are without merit, a cumulative error argument based upon these errors must also fail."); *Griffin v. State*, 866 So. 2d 1, 22 (Fla. 2003) (holding that a cumulative error claim must fail where individual claims of error alleged are either procedurally barred or without merit).

Appellant's final claim—that he had a right to resentencing because in the scoresheet and the judgment and sentence the trial court improperly described attempted second-degree murder with a firearm as a first-degree felony punishable by life in prison—is also meritless. While Appellant was correct that his judgment and sentence erroneously reflected his offense as a first-degree felony

---

[*] In this line of questioning, the prosecutor asked Flagg if he had been with Appellant at a club called Kava Lounge some months prior to the shooting in the instant case, and Flagg said he had. Flagg said Appellant had been patted down at that club. The prosecutor asked if Flagg had seen Appellant take a gun out of his waistband at that time, and Flagg said no. The prosecutor asked again if Flagg had ever seen a gun on Appellant that night at Kava Lounge, and Flagg said no. From a sidebar conference prior to this line of questioning, it is clear that the prosecutor expected Flagg to testify that Appellant had a gun at the Kava Lounge because of a prior shooting there with which Appellant had been separately charged.

punishable by life in prison, rather than a first-degree felony, Appellant's scoresheet contained the correct values for offense level and offense points. Moreover, the trial court sentenced Appellant under section 775.087, Florida Statutes. Under section 775.087(1)(b), when a defendant uses a firearm in the commission of a second-degree felony, the statute reclassifies the offense to a first-degree felony. Subsection (2)(a)3 states that anyone convicted of an enumerated felony (including attempted murder) who discharges a firearm and causes great bodily harm as a result must be sentenced to at least twenty-five years in prison and up to a life sentence. Appellant shot the victim five times, and the victim was in the hospital for months as a result of the injuries suffered from the shooting. Thus, Appellant has no right to resentencing, and the postconviction court correctly denied Appellant's motion.

AFFIRMED.

BILBREY and TANENBAUM, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Gregory D. Jones Jr., pro se, Appellant.

Ashley Moody, Attorney General, Tallahassee, for Appellee.

7